**Terry P. POWERS, Next Friend of Hillary Ann Powers, a Minor; Terry P. Powers, Personal Rep. of Nancy Diane Powers, Dec'd; John Muller, Personal Rep. of Thomas Muller, Dec'd; Thomas E. Lane, Personal Rep. of Joey Bordeaux, Dec'd; Judith Reed, Personal Rep. of Stephen Knapp, Dec'd and Timothy Knapp, Dec'd, Plaintiffs,**

v.

**BAYLINER MARINE CORPORATION, a Delaware corporation.**

No. 1:92–CV–571.

United States District Court,
W.D. Michigan,
Southern Division.

May 17, 1994.

William J. Heaphy, Vandeveer Garzia, P.C., Holland, MI, for plaintiffs.

William F. Mills, Gruel, Mills, Nims & Pylman, Grand Rapids, MI, for defendant.

## MEMORANDUM OPINION AND ORDER

McKEAGUE, District Judge.

On April 28, 1994, the Court heard oral arguments on numerous motions filed by the parties in preparation for trial. The Court adjudicated most of these motions by order dated May 2, 1994. The Court took several of the motions under advisement and gave the parties opportunity to file supplemental briefs. The supplemental briefing is now complete. This opinion and order contains the Court's rulings on the outstanding motions.

### I. Non–Pecuniary (Loss of Society) Damages

Plaintiffs are the personal representatives of the estates of four persons who died when the recreational vessel, a sailboat, in which they were passengers, capsized on Lake Michigan, and the next friend of a minor fifth person who was injured in the same incident. They have asserted wrongful death and personal injury claims against the manufacturer of the sailboat, Bayliner Marine Corporation ("Bayliner"), under general maritime law. Bayliner has filed a motion in limine asking the Court to exclude all evidence that might be offered in support of plaintiffs' claims for non-pecuniary damages. Bayliner contends non-pecuniary damages for loss of society are no longer recoverable under general maritime law in the wake of *Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990).

In *Miles*, the Supreme Court held the nondependent mother of a Jones Act seaman

could not recover from the decedent's employer for loss of society in a wrongful death action based on the unseaworthiness of the vessel under general maritime law. This is the specific holding of *Miles*. Bayliner contends, however, that the intended reach of *Miles* is much broader than its holding. Bayliner asks the Court to recognize the Supreme Court's purpose of furthering the uniform plan of maritime tort law which Congress has sought to establish. Accordingly, *Miles* is said to preclude recovery for loss of society in all general maritime cases.

■ Bayliner paints with a brush too broad. The Jones Act, 46 U.S.C.App. § 688, creates a wrongful death action against the employer, in favor of the personal representative of a seaman whose death is caused by negligence in the course of employment. It incorporates the remedies available to railway employees under the Federal Employers' Liability Act, 45 U.S.C. §§ 51–59. These remedies have traditionally been construed as providing recovery only for pecuniary loss. *Miles*, 498 U.S. at 31, 111 S.Ct. at 325. Hence, loss of society damages have been held not recoverable under the Jones Act as well. *Id.*

*Miles* does not involve a Jones Act claim. The Supreme Court recognized that Miles, as personal representative of a deceased seaman, had a cause of action under general maritime law for her son's death allegedly caused by the vessel's unseaworthiness, pursuant to *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). The claim was not precluded by the Jones Act, even though it involved the claim of a seaman's personal representative against his employer, because it was based on unseaworthiness, not negligence. 498 U.S. at 29, 111 S.Ct. at 324. Yet, though the cause of action was held not precluded, the measure of recovery available to a seaman, or on his behalf, against his employer, was held to be dictated by the Jones Act. *Id.*, at 30–32, 111 S.Ct. at 325–26. Justice O'Connor explained the rationale as follows:

> The general maritime claim here alleged that [decedent] had been killed as a result of the unseaworthiness of the vessel. It would be inconsistent with our place in the

constitutional scheme were we to sanction more expansive remedies in a judicially-created cause of action in which liability is without fault than Congress has allowed [under the Jones Act] in cases of death resulting from negligence. We must conclude that there is no recovery for loss of society in a general maritime action for the wrongful death of a Jones Act seaman. *Id.*, at 32, 111 S.Ct. at 326. She concluded by observing: "Today we restore a uniform rule applicable to all actions for the wrongful death of a seaman...." *Id.*

The uniformity explicitly restored is thus limited to the wrongful death claims of seamen. Further, the extent of the uniformity is defined by the Jones Act, which purports to govern only as between seamen and their employers.

■■ Here, none of the plaintiffs is a seaman or personal representative of a seaman, and no claim is made against a seaman's employer. As important as the *Miles* decision is in some respects, it simply is inapposite here.

The Court acknowledges the existence of contrary authority: *Walker v. Braus*, 995 F.2d 77, 81–82 (5th Cir.1993); *Newhouse v. United States*, 844 F.Supp. 1389, 1393–94 (D.Nev.1994); *Shield v. Bayliner Marine Corp.*, 822 F.Supp. 81, 83–84 (D.Conn.1993); *Carnival Cruise Lines v. Red Fox Ind., Inc.*, 813 F.Supp. 1185, 1186–87 (E.D.La.1993). These rulings represent anticipatory extensions of *Miles*. As maritime law continues to evolve, the Supreme Court may very well reach the same conclusion in the future, but this Court applies the law as it now exists.

Accordingly, the Court follows the course charted by a growing list of authorities that have read *Miles* more narrowly: *Schumacher v. Cooper*, 850 F.Supp. 438 (D.S.C.1994); *Emery v. Rock Island Boat Works, Inc.*, 847 F.Supp. 114 (C.D.Ill.1994); *Petition of Cleveland Tankers, Inc.*, 843 F.Supp. 1157, 1159–60 (E.D.Mich.1994); *Sugden v. Puget Sound Tug & Barge Co.*, 796 F.Supp. 455, 457 (W.D.Wash.1992).

If *Miles* does not preclude recovery for loss of society under general maritime law, then it follows that such damages are recov-

erable now to the same extent they were recoverable prior to *Miles*. That is, pursuant to the principles enunciated in *Moragne, supra,* and *Sea–Land Services, Inc. v. Gaudet,* 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), loss of society damages are recoverable under general maritime law where there is no statute that would preclude the same, but only, as the parties here agree, by dependent survivors. See *Anderson v. Whittaker Corp.,* 894 F.2d 804, 811–12 (6th Cir.1990); *Wahlstrom v. Kawasaki Heavy Industries, Ltd.,* 4 F.3d 1084, 1091–92 (2nd Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1060, 127 L.Ed.2d 380 (1994); *Cleveland Tankers, supra,* 843 F.Supp. at 1159–60; *Cantore v. Blue Lagoon Water Sports, Inc.,* 799 F.Supp. 1151, 1155 (S.D.Fla.1992).

Accordingly, defendant Bayliner's motion to exclude evidence relating to plaintiffs' claims for loss of society suffered by dependent survivors is **DENIED.**[1]

## II. Punitive Damages

Bayliner's motion to exclude all evidence relating to punitive damages is similarly based on *Miles v. Apex Marine Corp., supra.* Bayliner contends punitive damages are a species of non-pecuniary damages intended to come within the reach of *Miles*' uniformity dragnet. As indicated *supra, Miles*' dragnet does not sweep as broadly as Bayliner would have it.

It is undisputed that punitive damages are a form of non-pecuniary damages. As with loss of society damages, many post-*Miles* decisions have used broad language in discussing the impact of *Miles* on the availability of punitive damages under general maritime law. See e.g., *Wahlstrom v. Kawasaki Heavy Ind., Ltd., supra,* 4 F.3d at 1094; *Boykin v. D.Y. A/S,* 822 F.Supp. 324, 326 (E.D.Va.1993); *LaVoie v. Kualoa Ranch & Activity Club, Inc.,* 797 F.Supp. 827, 830–31 (D.Hawaii 1992). In *Miller v. American President Lines, Ltd.,* 989 F.2d 1450, 1459 (6th Cir.1993), *cert. denied* — U.S. —, 114 S.Ct. 304, 126 L.Ed.2d 252 (1993), the Sixth Circuit, following *Miles,* held that "punitive

damages are not available in a general maritime law unseaworthiness action for the wrongful death of a seaman." Then, after surveying four federal statutes relating to maritime law, the *Miller* court observed in dictum that "there is a general congressional policy disfavoring awards of punitive damages in maritime wrongful death actions." 989 F.2d at 1457.

Still, a careful reading of the case law reveals that punitive damages have been disallowed under general maritime law, consistent with *Miles,* only where allowing them would contravene not just a general policy favoring uniformity, but an established definite statutory scheme. See *Boykin, supra* (involving a survival action by the estate of a seaman); *LaVoie, supra* (a seaman's personal injury action). This narrower reading of the impact of *Miles* on punitive damages claims is made explicit in several recent decisions. See *CEH, Inc. v. F/V "Seafarer",* 153 F.R.D. 491 (D.R.I.1994); *Newhouse v. United States, supra,* 844 F.Supp at 1394; *Mussa v. Cleveland Tankers,* 802 F.Supp. 84, 87 (E.D.Mich.1992), *recon. denied,* 802 F.Supp. 88 (E.D.Mich.1992); *Anderson v. Texaco, Inc.,* 797 F.Supp. 531, 536 (E.D.La.1992); *DuPlantis v. Texaco, Inc.,* 771 F.Supp. 787 (E.D.La.1991).

Bayliner argues the dictum found in *Miller* signals the Sixth Circuit's intent to read *Miles* more broadly. Yet, the cited *Miller* comment is just that: a thing said in passing, not integral to the court's ruling. Further, the comment does not constitute an opinion of any sort, but merely an observation of the general and undeniable congressional distaste for punitive damages. Congress has not spoken, however, concerning claims of the nature here presented, and the "policy" that may be gleaned from the Jones Act, the Death on the High Seas Act and the Longshore and Harbor Workers' Compensation Act, simply does not extend to these claims. See also *Cleveland Tankers, supra,* 843 F.Supp. 1157 (reading *Miller* narrowly). In admiralty jurisdiction, where Congress has not spoken, the general maritime law,

---

**1.** By order dated May 2, 1994, the Court granted the motion with respect to evidence of non-pecu-

niary losses suffered by non-dependent survivors.

"an amalgam of traditional common law rules" developed by the judiciary, applies. *East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 864–65, 106 S.Ct. 2295, 2298–99, 90 L.Ed.2d 865 (1986).

■ Plaintiffs' claims do not assert the interests of a seaman or a longshoreman. Their claims arise under general maritime law and are of a nature having no counterpart under any maritime statute. They are based on products liability theories and come within the bounds of admiralty jurisdiction only because plaintiffs' injuries occurred on navigable waters with a nexus to traditional maritime activity.[2] Their claims for punitive damages do not run afoul of *Miles'* uniform rule regarding the claims of seamen or the general congressional policy recognized in *Miller.* Under these circumstances, if punitive damages were formerly recoverable under general maritime law, then *Miles* and *Miller* stand as no impediment to their continuing availability, given appropriate facts.

As a general proposition, punitive damages have clearly been available under general maritime law. Indeed, the Fifth Circuit decision which the Supreme Court affirmed in *Miles,* includes a holding to this effect. *Miles v. Melrose,* 882 F.2d 976, 989 (5th Cir.1989).[3] In addition, punitive damages have been held recoverable in this district in a maritime products liability section similar to this. *Anderson v. Whittaker Corp.,* 692 F.Supp. 764, 774 (W.D.Mich.1988), *aff'd in part and rev'd in part on other grounds,* 894 F.2d 804 (6th Cir.1990).

Accordingly, the Court concludes plaintiffs may, notwithstanding *Miles v. Apex Marine Corp.,* recover punitive damages on the claims asserted. Bayliner's motion to exclude all evidence relating to punitive damages is therefore DENIED.

### III. Strict Liability

Bayliner has moved the Court to exclude all evidence relating to any strict liability theory of recovery. Plaintiffs' claims are based on products liability theories and al-lege defendant Bayliner is strictly liable and liable for its negligence. In *East River, supra,* the Supreme Court held: "We join the Courts of Appeals in recognizing products liability, *including strict liability,* as part of the general maritime law." 476 U.S. at 865, 106 S.Ct. at 2299 (emphasis added). Bayliner argues, however, that the incorporation of products liability law into maritime law represents an assimilation of state law principles. Inasmuch as the law of the forum state does not recognize strict products liability, see *Toth v. Yoder Co.,* 749 F.2d 1190, 1193 (6th Cir.1984); *Pelc v. Bendix Machine Tool Corp.,* 111 Mich.App. 343, 356, 314 N.W.2d 614 (1981), Bayliner contends the theory should have no part in this action.

■ Bayliner misapprehends the role of state law in the formulation of general maritime law. That admiralty courts draw partially from state law in formulating a uniform general maritime law does not mean that they are bound to apply the law of the forum state or of the state adjacent to the navigable waters in which the cause of action arose. See *Wahlstrom, supra,* 4 F.3d at 1089, and cases cited therein. In *East River,* the Supreme Court, citing *Pan–Alaska Fisheries, Inc. v. Marine Constr. & Design Co.,* 565 F.2d 1129, 1135 (9th Cir.1977), and *Ocean Barge Transport Co. v. Hess Oil Virgin Islands Corp.,* 726 F.2d 121, 123 (3rd Cir.1984), all but adopted the Restatement (Second) of Torts § 402A formulation of the strict products liability theory as part of general maritime law. See also *Vickers v. Chiles Drilling Co.,* 822 F.2d 535, 538 (5th Cir.1987); *Delta Marine, Inc. v. Whaley,* 813 F.Supp. 414, 418 (N.D.N.C.1993).

■ This Court sits in admiralty jurisdiction and plaintiffs' claims have been pleaded under general maritime law. The Court is thus obliged to apply maritime law. To the extent Michigan law is in conflict with general maritime law, it must be disregarded. *Wahlstrom, supra,* 4 F.3d at 1089; *Preston v. Frantz,* 11 F.3d 357, 358–59 (2nd Cir. 1993). See also *Anderson v. Whittaker*

---

**2.** Products liability law is incorporated into general maritime law. *East River, supra,* 476 U.S. at 865–66, 106 S.Ct. at 2299.

**3.** The Supreme Court was not asked to address this ruling.

*Corp., supra,* 692 F.Supp. at 768. Thus, Michigan's failure to expressly embrace strict liability does not preclude plaintiffs' pursuit of such claims in this case. Bayliner's motion in limine is **DENIED.**

### IV. Michael DeWilde's Conviction and Settlement

The owner and operator of the subject sailboat is Michael DeWilde. In August 1992, he was convicted by plea of nolo contendere to three counts of negligent homicide in connection with the incident giving rise to this action. It also appears that plaintiffs have settled all potential claims against DeWilde by accepting $100,000 from DeWilde's homeowner's insurance company, State Farm Insurance Company, representing the limit of its liability. Plaintiffs have asked the Court to exclude all reference to each of these developments as extraneous and prejudicial. Bayliner argues both matters are relevant to the jury's apportionment of fault.

As a general rule, all evidence that is relevant is admissible. Fed.R.Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R.Evid. 401. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice or confusion of the issues. Fed.R.Evid. 403.

■ Bayliner contends both the conviction and settlement will have a tendency to establish and define DeWilde's contributory fault in the causation of plaintiffs' injuries. This determination is integral to the case, Bayliner contends, because the Supreme Court has recently adopted the "proportionate share approach" to determining "how a settlement with less than all of the defendants in an admiralty case should affect the liability of nonsettling defendants." *McDermott, Inc. v. AmClyde and River Don Castings, Ltd.,* —— U.S. ——, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994). Under the proportionate share approach, "the money paid [by a settling tortfeasor] extinguishes any claim that the injured party has against the released tortfea-

sor and also diminishes the claim that the injured party has against the other tortfeasors by the amount of the equitable share of the obligation of the released tortfeasor." *Id.,* quoting the Restatement (Second) of Torts § 886A. Use of this formula necessarily entails determination of the released tortfeasor's equitable share of the obligation.

■ Plaintiffs contend the *McDermott* rule does not come into play because DeWilde never was and never has been made a party to this action. Indeed, the proportionate share approach was employed in *McDermott* only among *defendants* in the case. Moreover, other courts employing a similar rule pre-*McDermott* have expressly observed that it only applies among parties before the court. *Joia v. Jo–Ja Service Corp.,* 817 F.2d 908, 916–17 (1st Cir.1987), *cert. denied* 484 U.S. 1008, 108· S.Ct. 703, 98 L.Ed.2d 654 (1988); *Drake Towing Co., Inc. v. Meisner Marine Constr. Co.,* 765 F.2d 1060, 1067–68 (11th Cir.1985); *Ebanks v. Great Lakes Dredge & Dock Co.,* 688 F.2d 716, 722 (11th Cir.1982), *cert. denied* 460 U.S. 1083, 103 S.Ct. 1774, 76 L.Ed.2d 346 (1983); *Leger v. Drilling Well Control, Inc.,* 592 F.2d 1246, 1248–49 (5th Cir.1979); *Groff v. Chandris, Inc.,* 835 F.Supp. 1408, 1409–10 (S.D.Fla. 1993). Bayliner has cited no contrary authority. As plaintiffs observe, it would be fundamentally unfair, even under liberal federal pleading requirements, to require them to litigate fault apportionment where the related issues have never been formally framed (1) through statement of a claim by plaintiff against DeWilde; (2) through statement of a cross-claim or third-party claim by Bayliner against DeWilde for contribution; or (3) through statement at least of an affirmative defense alleging DeWilde's contributory fault.

In *McDermott,* the Supreme Court has confirmed that fault and liability among several tortfeasors should be apportioned pro rata. Yet, where the issue has not been properly presented to the Court in the pleadings, neither can it be presented to the jury for determination. If the issue of fault apportionment will not be presented to the jury, then the relevance of DeWilde's conviction and settlement is diminished.

To be sure, Bayliner may still present proofs concerning proximate causation, which proofs may include evidence of DeWilde's negligence. However, where the jury will not be asked to quantify comparative faults, the probative value of the conviction and settlement, which is slight in the first place, is certainly and substantially outweighed by the danger of unfair prejudice and confusion of the issues.

First of all, DeWilde's conviction appears not to be admissible at all to show his negligence because it is hearsay and is of a nature, based on a plea of nolo contendere, expressly exempted from the hearsay exception embodied in Fed.R.Evid. 803(22). Further, because the conviction is based on a plea of nolo contendere, its significance is ambiguous. See 4 Weinstein's Evidence, ¶ 803(22)[01] p. 803–354; 2 Weinstein's Evidence, ¶ 410[06], pp. 410–44 and 410–45. To admit it as evidence that DeWilde was negligent would create a risk of unfair prejudice that could be obviated only by explanation, legal and factual, that would have a tendency to confuse the issues. This risk need not be borne because Bayliner will have the opportunity to prove DeWilde's negligence by other means.

The same reasoning applies to the settlement reached by plaintiffs with De-Wilde's insurer. It is inadmissible under Fed.R.Evid. 408 to show DeWilde's liability for plaintiffs' injuries. 2 Weinstein's Evidence ¶ 408[04], pp. 408–30 and 408–31. Even if evidence of the settlement were otherwise admissible, the danger of unfair prejudice and confusion would compel its exclusion under Fed.R.Evid. 403.

For these reasons, plaintiffs' motion to exclude evidence of and reference to DeWilde's conviction and settlement for the purpose of showing his negligence is **GRANTED**.

**IT IS SO ORDERED.**