■ In the Matter of JOSEPH A., JR. ADMINISTRATION FOR CHILDREN'S SERVICES, Respondent; FAUSAT O., Appellant. (Proceeding No. 1.) In the Matter of MICHAEL F. ADMINISTRATION FOR

CHILDREN'S SERVICES, Respondent; FAUSAT O., Appellant. (Proceeding No. 2.) [937 NYS2d 250]—

Ordered that the order of fact-finding is reversed, on the law and the facts, without costs or disbursements, the petitions are denied, the proceedings are dismissed, and the order of disposition subsequently entered upon the order of fact-finding is vacated.

This child protective proceeding concerning Joseph A. (who was then 12 years old) and Michael F. (who was then 10 years old) was commenced in June 2008. It was alleged that the children's mother, a single parent who resided in Richmond County and was employed in New Jersey, was mentally unstable and suffering from hallucinations and delusions, but had refused treatment. It was also alleged that the mother left the subject children home alone for long periods of time while she was at work. The children were removed from the mother on June 27, 2008, and were placed in nonkinship foster care in Queens County. A fact-finding hearing was commenced 17 months later, and testimony was taken on five separate days over the course of the 16-month period between November 2009 and March 2011, during which time the children remained in the custody of the petitioner, the Administration for Children's Services.

At the fact-finding hearing, it was established that while the children were in the mother's care, and despite her refusal to acknowledge her mental illness, they had near-perfect attendance at school and were doing well, even thriving, academically. In fact, several of the older child's report cards indicated that he was performing above grade level in several subjects. Both children also were up to date on their medical examinations and vaccinations, and were of appropriate height and weight for their age. At the conclusion of the hearing, the Family Court issued an order of fact-finding in which it found that the two children were neglected children under Family Court Act § 1012 (f), because the evidence established that the children "were at risk of harm."

Family Court Act § 1012 (f) defines a neglected child as one "whose physical, mental or emotional condition has been

impaired or is in *imminent* danger of becoming impaired as a result of the failure of his parent or other person legally responsible for his care to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or a substantial risk thereof" (Family Ct Act § 1012 [f] [i] [B] [emphasis added]; *see Matter of Afton C. [James C.]*, 71 AD3d 887, 888 [2010], *affd* 17 NY3d 1 [2011]). Here, in determining that the children were neglected, the Family Court applied the wrong standard, even expressly stating on the record, erroneously, that there was no statutory requirement of a finding of "imminent" danger of impairment.

Moreover, based on our own evaluation of the record, giving great deference to the Family Court's credibility determinations (*see Matter of Alexander M. [Benjamin M.]*, 88 AD3d 794 [2011]), we find that the petitioner failed to establish by a preponderance of the evidence (*see* Family Ct Act § 1046 [b] [i]; *see Matter of Afton C. [James C.]*, 71 AD3d at 888) that, as alleged in the petition, the children's physical, mental, or emotional condition was in imminent danger of becoming impaired.

First, proof of mental illness alone will not support a finding of neglect (*see Matter of Tomieke Y.*, 32 AD3d 1041, 1042 [2006]). The evidence must establish a causal connection between the parent's condition, and actual or potential harm to the children (*see Matter of Soma H.*, 306 AD2d 531 [2003]; *Matter of Madeline R.*, 214 AD2d 445, 446 [1995]; *Matter of Erica M.*, 206 AD2d 876 [1994]). Here, there was no evidence that the mother's mental illness or delusional beliefs placed the children in imminent danger (*see Matter of Jayvien E. [Marisol T.]*, 70 AD3d 430, 436 [2010]; *cf. Matter of Anthony TT. [Philip TT.]*, 80 AD3d 901, 903 [2011]). Indeed, as noted, both children consistently did well in school, had near-perfect attendance records, were up-to-date on their immunizations, and were healthy.

Second, there was insufficient evidence of inadequate supervision creating an imminent danger of harm to the children. While it was established that the children had told the caseworker that they were sometimes left unattended for lengthy periods of time while the mother was at work, the vague and contradictory evidence on the subject did not establish that any lack of supervision created an imminent danger to the children's health, safety, or mental or emotional condition, especially in light of the evidence related to the children's physical health, educational performance, and age. In sum, we conclude that the petitioner did not meet its burden of establishing that the children's "physical, mental or emotional condition . . . was

. . . in imminent danger of becoming impaired" (*Matter of Bianca QQ. [Kiyonna SS.]*, 75 AD3d 679, 680 [2010]; *see Matter of Antonio NN.*, 28 AD3d 826, 827 [2006]).

With regard to the prolonged delays that occurred in the conduct of these proceedings, we recognize the burdens under which the judiciary operates. Yet, the fact-finding issues in this case were not complicated. The hearing itself was not lengthy. Nevertheless, it took an inordinate amount of time to commence and complete the fact-finding hearing (*see* Family Ct Act § 1049). The children were removed from the mother's custody in June 2008. After multiple adjournments, the hearing was commenced in November 2009 and was not completed until March 2011. The children remained in nonkinship foster care at a location that made it extremely difficult for the family to maintain a relationship. We further note that, inasmuch as this Court's determination will result in the return of the children to the mother after three years apart, reunification may be facilitated if the petitioner provides, and the mother accepts, appropriate services or referrals.

Accordingly, the order of fact-finding must be reversed, the petitions denied, the order of disposition subsequently entered upon the order of fact-finding vacated, and the proceedings dismissed. Rivera, J.P., Balkin, Eng and Austin, JJ., concur.