OPINION OF THE COURT
Ann E. O’Shea, J.
The Commissioner of the Administration for Children’s Services (ACS) commenced this proceeding alleging that the subject child, William N., Jr. (date of birth Mar. 2, 2011) (the child or William), was neglected by his mother, Kimberly H., and his father, William N., Sr. (collectively the respondents). Specifically, ACS alleges that the child’s “physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired” as a result of the mother’s and father’s use of marijuana while the mother was pregnant; the father’s “failure to take any action” to stop the mother from smoking marijuana; and the mother’s failure to comply with a dispositional order entered, less than three months before William was born, in a case involving William’s then 4[1]/2-year-old sibling, Akasha. William was removed from the respondents’ care two days after his birth, remanded to the custody of the Commissioner, and temporarily placed with his maternal aunt pending further proceedings.
A fact-finding hearing commenced on February 14, 2012, and was continued on March 28, 2012, and October 10, 2012. At the conclusion of ACS’s evidence, respondents moved pursuant to CPLR 4401 to dismiss the petition on the grounds that ACS had failed to establish a prima facie case of neglect against them. After submission of briefs, the court denied the motions and continued the hearing.
The Evidence
Petitioner’s evidence consisted of records from Beth Israel Hospital (the hospital) where William was born and the testimony of Child Protective Specialist Leah Brown. In addition, the court took judicial notice of the fact-finding and dispositional orders in Akasha’s case. The mother testified on her own behalf. The father presented no evidence.
*605 The Mother’s and Father’s Use of Marijuana
The hospital records established that the mother tested positive for marijuana when William was born, but William tested negative. Ms. Brown testified that the mother admitted smoking marijuana during her pregnancy. The mother admitted in the hearing that she smoked marijuana when she was seven months pregnant with William — around the same time that she consented to entry of a finding that she neglected Akasha by misusing marijuana. The mother explained that she smoked marijuana while she was pregnant with William because it was a difficult pregnancy, she was unable to eat, and the marijuana helped increase her appetite and her tolerance of food. Regardless, she did smoke marijuana while she was pregnant with William.
The hospital records also established that, although the mother tested positive for marijuana when William was born, William tested negative for alcohol, marijuana, or any other controlled substance. Except for a slightly elevated bilirubin count, which had no connection to the mother’s marijuana use, William was a healthy, normal newborn in all respects.
Family Court Act § 1012 (f) defines a “neglected child” in pertinent part as a child under the age of 18
“(i) whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his parent ... to exercise a minimum degree of care
“(B) in providing the child with proper supervision or guardianship ... by misusing a drug or drugs ”i
To establish that William was a neglected child, petitioner had *606 to prove, by a preponderance of the evidence (Family Ct Act § 1046 [b] [i]; Nicholson v Scoppetta, 3 NY3d 357, 368 [2004]), not only that the mother misused a drug or drugs, which is not in dispute, but also that William’s physical, mental or emotional condition was impaired or placed in imminent danger of becoming impaired as a result of the mother’s drug use (id.).
The Court of Appeals instructed in Nicholson that, in determining whether a child should be removed from her home, a court must “focus on serious harm or potential harm to the child, not just on what might be deemed undesirable parental behavior” (3 NY3d at 369). Moreover, the Court emphasized that “imminent danger” means “near or impending, not merely possible” (id.).
The Court of Appeals reiterated Nicholson’s teaching in Matter of Afton C. (James C.) (17 NY3d 1, 9 [2011]). In that case, the Court held that the respondent father’s conviction of second-degree rape and having sex with a minor was insufficient to establish that he posed an imminent risk to his teenage daughters and should thus be removed from the home. The Court admonished that the test is whether the respondent failed to exercise a “minimum degree of care — not maximum, not best, not ideal — and the failure must be actual, not threatened” (id.). Quoting its earlier decision in Matter of Marie B. (62 NY2d 352, 358 [1984]), the Afton Court noted that
“these statutory requirements have constitutional underpinnings:
“ ‘Fundamental constitutional principles of due process and protected privacy prohibit governmental interference with the liberty of a parent to supervise and rear a child except upon a showing of overriding necessity. . . . [Thus,] the State may not deprive a natural parent of the right to the care and custody of a child absent a demonstration of . . . behavior evincing utter indifference and irresponsibility to the child’s well-being’ (Matter of Marie B., 62 NY2d 352, 358 [1984]).” (Afton, 17 NY3d at 9 n 3.)
In a case of particular relevance to the present one, the Court of Appeals held in Matter of Nassau County Dept. of Social Servs. v Denise J. (87 NY2d 73, 79 [1995]) that a newborn’s pos *607 itive toxicology for cocaine without proof that the “child has been physically, mentally or emotionally impaired, or is in imminent danger of being impaired” is insufficient to establish neglect under Family Court Act § 1012 (f) (i) (B). (See also Matter of Jones v Jones, 34 Misc 3d 1226[A], 2012 NY Slip Op 50257[U] [Fam Ct, Kings County 2012]; compare Matter of Joseph A. [Fausat O.], 91 AD3d 638 [2d Dept 2012] [the mother’s mental illness and delusional beliefs were insufficient to support a finding of neglect in the absence of evidence that the children were harmed or placed in imminent risk of harm as a result of her illness].) Unlike the baby in Denise J., who had a positive toxicology for cocaine, William tested negative for all unlawful substances and alcohol. And there was no evidence that the mother’s positive toxicology for marijuana — or her use of marijuana while she was pregnant with William — caused any physical, mental, or emotional harm to William or put him at risk of such harm. Indeed, there was no evidence presented that marijuana itself causes any harm to a developing fetus (see e.g. Matter of Jones v Jones, 34 Misc 3d 1226[A], 2012 NY Slip Op 50257[U] [Fam Ct, Kings County 2012]). Nor was there any evidence that other conduct of the mother in addition to or in combination with her use of marijuana placed William at risk of harm (cf. Matter of Aaliyah G., 51 AD3d 918 [2d Dept 2008] [father’s misuse of marijuana and using the child as a barricade against the police constituted neglect]).
In the absence of any evidence that William was actually or potentially injured as a result of the mother’s drug abuse, the allegations that she neglected William as a result of misuse of marijuana fail.
With respect to the allegations of misuse of marijuana leveled against the father, there was no evidence that he ever used marijuana in the presence of William (see Matter of Jeffrey M. [Noemi C.], 102 AD3d 608 [1st Dept 2013]). Furthermore, since petitioner failed to prove that the mother’s use of marijuana impaired William or placed him in imminent risk of impairment, its allegations that the father neglected William by misusing marijuana or by failing to stop the mother from smoking marijuana must, a fortiori, fail.
The Mother’s Failure to Comply with a Prior Order of Disposition
The order of disposition in Akasha’s case required the mother to undergo a mental health evaluation, engage in drug treatment, anger management, parenting skills, and domestic *608 violence programs. Child Protective Specialist Leah Brown testified that the mother either did not begin or did not complete all those services. The mother testified that she did begin at least some of the programs, but acknowledged that she did not complete them. She explained that she was at the end of a high-risk pregnancy, and, in addition to completing the mandated programs, she had to pursue housing and public assistance. She testified that she found traveling to all the required programs and obtaining appropriate housing and financial assistance was difficult while she was in the last trimester of a difficult pregnancy. Regardless of the reasons, she admitted that she did not fully comply with the Akasha disposition order.
Article 10 proceedings are not intended to be punitive (Matter of Diane P., 110 AD2d 354, 357 [2d Dept 1985]). Failure to comply with a disposition order is not to be condoned, but the response to such failure must be tempered by some consideration of the reasons for the noncompliance. When appropriate, a recalibration of the service plan to ease compliance may be appropriate. In some circumstances, the noncompliance may justify a finding of contempt (Family Ct Act § 156). However, unless there is evidence that a failure to comply with an order of disposition resulted in injury to the child or placed him in imminent danger of injury, a finding of neglect based solely on the noncompliance is not warranted.
The petition did not allege and there was no evidence to prove that William suffered any injury or was placed in imminent danger of injury because the mother did not comply with the order of disposition in Akasha’s case. For these reasons, the allegation that William was a neglected child as a result of the mother’s failure to comply with that order fails.
Derivative Neglect
The petition in Akasha’s case alleged that the mother neglected Akasha as a result of her misuse of marijuana; her failure to comply with an order of protection issued against her former paramour; and her failure to provide Akasha with adequate supervision and guardianship. The court notations on the F-99 indicate that the mother consented under Family Court Act § 1051 (a) only to entry of a finding that she had neglected Akasha as a result of her misuse of marijuana, and the other allegations were, therefore, implicitly dismissed.
The petition in the instant case appears to allege that William was “derivatively” neglected under Family Court Act § 1046 (a) (i) based upon the Family Court Act § 1051 (a) consent finding *609 in Akasha’s case.[2] Family Court Act § 1046 (a) (i) provides that “proof of the abuse or neglect of one child shall be admissible evidence on the issue of the abuse or neglect of any other child of, or the legal responsibility of, the respondent.” There is no per se rule that the children of a respondent who neglects one sibling are automatically also neglected children (Matter of Dutchess County Dept. of Social Servs. v Douglas E., 191 AD2d 694 [2d Dept 1993]). Rather, the court must consider, inter alia, the nature of the underlying misconduct and whether it evidences “a fundamental defect in the parent’s understanding of the duties of parenthood” sufficient to create a substantial risk of impairment for any child in his care (id.; see also Matter of Andrew B.-L., 43 AD3d 1046, 1047 [2d Dept 2007]).
In determining whether the direct abuse or neglect demonstrated a fundamental defect in the respondent’s understanding of the duties of parenthood such as would create a substantial risk of harm to any child in his care, the court should consider: (a) the seriousness of the underlying conduct; (b) whether it involved a course of abusive or neglectful behavior; (c) whether there is any evidence that the siblings who are alleged to be derivatively neglected suffered direct harm or were placed in imminent risk of harm as a result of the abuse or neglect of the “target child”; and (d) whether the direct abuse or neglect was sufficiently proximate in time to reasonably support a conclusion that the condition continues to exist (see e.g. Matter of Andrew B.-L., 43 AD3d at 1047-1048; Matter of Jahyalle F., 66 AD3d 1019, 1019-1020 [2d Dept 2009]).
In the present case, while the evidence demonstrated that the mother’s misuse of marijuana, which was the basis of the finding that the mother neglected Akasha, involved a course of conduct that continued up to approximately three months before William was born, there was no evidence that either Akasha or William was harmed or placed in imminent danger of harm by that conduct (Nicholson, 3 NY3d at 370; Matter of Andrew B.-L., 43 AD3d 1046 [2d Dept 2007] [no derivative neglect in absence of evidence that respondent used excessive corporal punishment against the other children]; Matter of Julia BB. *610 (Diana BB.), 42 AD3d 208 [2007], lv denied 9 NY3d 815 [2007] [no evidence that siblings were harmed or put at imminent risk of harm by respondent’s neglect of target child]).
Moreover, as previously discussed, misuse of an unlawful substance, standing alone, is insufficient to establish neglect (Denise J., 87 NY2d at 79). Nor does misuse of marijuana constitute the type of neglectful or abusive conduct that has generally served as the basis for a finding of derivative neglect (see e.g. Matter of Jahyalle F., 66 AD3d at 1019-1020 [by placing her son in a hot oven as a form of discipline, respondent demonstrated a fundamental defect in her understanding of parental duties]; Matter of Ramsay M., 17 AD3d 678 [2d Dept 2005] [the sexual abuse of one child was sufficient to establish such a flawed understanding of parental responsibility as to create a risk of harm to other children in his care]; Matter of Rasheda S., 183 AD2d 770 [2d Dept 1992] [same]; Matter of Vincent L., 46 AD3d 395 [1st Dept 2007], lv denied 10 NY3d 706 [2008] [same]; Matter of Cory S. (Terry W.), 70 AD3d 1321 [4th Dept 2010] [allowing her daughter to be sexually abused by her adult son sufficient to establish derivative neglect]; Matter of Jasmine A., 18 AD3d 546 [2d Dept 2005] [same]; Matter of Dutchess County Dept. of Social Servs. [Noreen K.], 242 AD2d 533 [2d Dept 1997] [three nonaccidental bone fractures suffered by two month old supported derivative finding as to other children]; Matter of Joshua R., 47 AD3d 465 [1st Dept 2008], lv denied 11 NY3d 703 [2008] [forcibly feeding a child and then slapping him in the face causing vomiting, a bloody nose, and bruised eye]; Matter of Eli G., 189 AD2d 764 [2d Dept 1993] [repeated beating of child with an electric cord]; Matter of Pierre M., 239 AD2d 262 [1st Dept 1997] [hitting child in the head with a wooden table leg with nail protruding]).
An additional question arises as to whether a finding of neglect entered on consent under Family Court Act § 1051 (a) in one case constitutes the “proof” of abuse or neglect necessary under Family Court Act § 1046 (a) (i) to be used as evidence to support a finding of neglect of a different child in a subsequent case. The issue appears to be one of first impression.
Section 1051 permits entry of a finding of abuse or neglect without a hearing in two different circumstances: section 1051 (a) explicitly permits entry of a finding on the consent of all parties — including the respondent — and the attorney for the child. Section 1051 (f) implicitly permits entry of a finding on respondent’s admission and distinguishes between an admission *611 and a consent by providing that, “[p]rior to accepting an admission to an allegation or permitting a respondent to consent to a finding of neglect or abuse,” the court must advise the respondent of the consequences of such admission or consent. In the first circumstance, the court accepts “an admission to an allegation” (emphasis added); in the second, the court permits the “respondent to consent to a finding” (emphasis added). The form order used by Family Court specifically states that the respondent consents to a finding “without admission.” There is a clear distinction between a “consent” to a finding of abuse or neglect and an “admission” of conduct constituting abuse or neglect under article 10 of the Family Court Act.
An admission to an allegation in an article 10 proceeding is analogous to a guilty plea in a criminal case. When a defendant in a criminal case pleads guilty, he waives his right to a trial and admits all of the elements of the crime charged (see e.g. United States v Berndt, 127 F3d 251, 258 [2d Cir 1997] [“A guilty plea is an unconditional admission of guilt and constitutes an admission of all the elements of a formal criminal charge” (citation and internal quotation marks omitted)]; Alexander v City of Peekskill, 80 AD2d 626, 626 [2d Dept 1981] [“A judgment of conviction is conclusive proof of the underlying facts”]). Similarly, an admission in an article 10 proceeding is dispositive of the factual allegations of the petition and operates as a complete adjudication of those allegations without a trial (see Matter of Nasir H., 251 AD2d 1010 [4th Dept 1998] [respondent’s admission sufficient to sustain the petition]).
A guilty plea is admissible and may constitute conclusive proof of the facts admitted in the plea in a subsequent litigation (see e.g. Merchants Mut. Ins. Co. v Arzillo, 98 AD2d 495, 502 [2d Dept 1984] [defendant’s guilty plea to arson was admissible and conclusive proof of his liability in a subsequent civil case for damages]; Alexander v City of Peekskill, 80 AD2d 626, 627 [2d Dept 1981] [defendant was precluded in a civil action for damages from denying the facts he admitted in a prior guilty plea]; Berndt, 127 F3d at 258). Similarly, an admission in an article 10 proceeding may be conclusive proof of the facts admitted in a separate litigation (see e.g. Matter of Daniel C.S. [Daniel S.], 4 AD3d 854 [4th Dept 2004], lv denied 2 NY3d 704 [2004] [respondent’s admission of neglect based on mental retardation in neglect proceeding was conclusive proof of disabling mental retardation in subsequent termination of parental rights proceeding]).
*612 In contrast to an admission, a respondent who consents to entry of a finding of abuse or neglect under Family Court Act § 1051 (a) neither admits nor denies the allegations in the petition, but merely consents to entry of a finding and to an order of disposition based on that finding. A consent to a finding under Family Court Act § 1051 (a) is analogous to a plea of nolo contendere in the criminal context.
Nolo contendere literally means “I will not contest it” (Black’s Law Dictionary 1048 [6th ed 1990]; see also 2-410 Weinstein’s Federal Evidence § 410.06 [1] [2d ed 1997]). It is a plea that arose from English common law dating back to the middle ages in which the criminal defendant does not contest the allegations against him, “waives his right to a trial and authorizes the court for purposes of the case to treat him as if he were guilty” (North Carolina v Alford, 400 US 25, 35 [1970]). Reciting some of the history of the nolo contendere plea, the Court in Alford explained that “[t]hroughout its history . . . , the plea of nolo contendere has been viewed not as an express admission of guilt but as a consent by the defendant that he may be punished as if he were guilty” (id. at 36 and n 8;[3] see also Hudson v United States, 272 US 451, 456-457 [1926] [holding that a plea of nolo contendere is like a plea of guilty for purposes of the case in which it is made and, therefore, a court could constitutionally impose a prison sentence on a defendant who pleaded nolo contendere]). Unlike a guilty plea, a nolo contendere plea is not admissible as evidence of guilt or wrongdoing in any subsequent litigation (4 Wigmore, Evidence in Trials at Common Law § 1066 at 58 [3d ed 1940]).
The common-law principles governing the use of nolo pleas are codified in the Federal Rules of Evidence (rule 410) as well as the statutes and rules of many states that permit nolo contendere pleas (see e.g. Cal Penal Code § 1016; Colo Rev Stat Ann *613 § 16-7-205 [1] [c]; Fla Stat Ann, Rules Crim Pro rule 3.170 [a]; La Code Crim Pro Ann art 552; Md Code Ann, Md Rules rule 4-242 [a]; Neb Rev Stat § 29-1819.01; NC Gen Stat Ann § 15A-1011 [b]; Ohio Rev Code Ann, Rules Crim Pro rule 11 [A]; Or Rev Stat § 135.335 [2]; Pa Cons Stat Ann, Rules Crim Pro rule 590 [A] [2]; SD Codified Laws § 23A-7-3; Tenn Code Ann, Rules Crim Pro rule 11 [a] [2]; Utah Code Ann, Rules Crim Pro rule 11 [c]; Wis Stat Ann § 971.06 [1] [c]). Those principles are also applied in federal and state decisional law. New York law does not allow for nolo contendere pleas. The Criminal Procedure Law permits only “guilty” or “not guilty” pleas to criminal charges (see CPL 220.10).
Case law consistently distinguishes between guilty pleas, pursuant to which the defendant admits the facts underlying the criminal charge, and nolo contendere pleas, pursuant to which the defendant neither admits nor denies the underlying facts (see e.g. United States v Nguyen, 465 F3d 1128, 1130 [9th Cir 2006] [a nolo contendere plea is, “first and foremost, not an admission of factual guilt”]; accord United States v Poellnitz, 372 F3d 562, 567-568 [3d Cir 2004]; Olsen v Correiro, 189 F3d 52, 60 [1st Cir 1999]; United States v Graham, 325 F2d 922, 928 [6th Cir 1963]; Town of Groton v United Steelworkers of Am., 254 Conn 35, 50-52, 757 A2d 501, 511 [2000]; Garron v State, 528 So 2d 353, 360 [Fla 1988] [“A nolo plea means ‘no contest,’ not T confess.’ . . . (The defendant) does not plead either guilty or not guilty, and it does not function as such a plea”]; Powers v Bayliner Mar. Corp., 855 F Supp 199, 205 [WD Mich 1994]; see also Mickler v Fahs, 243 F2d 515, 517 [5th Cir 1957] [“A plea of nolo contendere is a mere statement of unwillingness to contest and no more. It is not receivable in another proceeding as evidence of guilt. McCormick on Evidence, 512, § 242, n. 32; Wigmore on Evidence, Vol. IV p. 58, § 1066; Berlin v. United States, 3 Cir., 14 F.2d 497; United States v. Lair, 8 Cir., 195 F. 47; Twin Ports Oil Co. v. Pure Oil Co., D.C.Minn, 26 F.Supp 366; United States v. Plymouth Coupe, D.C.W.D.Pa., 88 F.Supp 93; United States v. Standard Ultramarine & Color Co., D.C.S.D.N.Y., 137 F.Supp 167”]).
Because a plea of nolo contendere does not establish the underlying facts of the offense — by evidence or by admission — it is not admissible against the defendant in a subsequent criminal or civil proceeding as substantive evidence that he committed the crime (see e.g. Nguyen, 465 F3d at 1131; Poellnitz, 372 F3d at 567-568; Olsen, 189 F3d at 60; United States v Adedoyin, *614 369 F3d 337, 344 [3d Cir 2004]; Town of Groton, 254 Conn at 50-52, 757 A2d at 511; Grizzard v State, 881 So 2d 673, 676-677 [Fla Dist Ct App 2004]; State ex rel. W.A., 63 P3d 607, 618 n 11 [Utah 2002]; University of W. Va. Bd. of Trustees v Fox, 197 W Va 91, 96, 475 SE2d 91, 96 [W Va 1996]; Graham, 325 F2d at 928; Garron, 528 So 2d at 360; Powers, 855 F Supp at 205).
While most cases adhere to the principle that neither a nolo plea itself as well as the facts underlying the plea nor the conviction and sentence resulting from a nolo plea are admissible as evidence in any subsequent litigation (see e.g. Nguyen, 465 F3d at 1131-1132), some cases distinguish between a nolo plea and a conviction or sentence entered on that plea, holding that the nolo conviction or sentence may be admissible in certain narrowly defined circumstances when the fact of the conviction or sentence has a particular legal significance. For example, in Olsen v Correiro, the court held that defendant’s conviction and sentence resulting from his nolo plea to a manslaughter charge was admissible as evidence in mitigation of damages in his subsequent civil case for damages for wrongful conviction and incarceration on a murder charge. In United States v Adedoyin (369 F3d 337, 344 [3d Cir 2004]), the court held that defendant’s conviction on a nolo plea was admissible to prove the fact of conviction in an improper entry to the United States as evidence that he had a prior felony conviction he failed to disclose. In each case where evidence of defendant’s prior conviction or sentence was held to be admissible for some collateral legal purpose, the courts have emphasized that such evidence could not be used as proof that defendant committed the alleged crime, as that would, in effect, unfairly transform the nolo plea into an admission (Olsen, 189 F3d at 60; Adedoyin, 369 F3d at 344).
The exclusion of nolo pleas from use in subsequent cases is premised on the belief that it would be fundamentally unfair to use such pleas as evidence of a defendant’s guilt or as proof of the underlying facts when those facts have never been proved or admitted (Olsen, 189 F3d at 60; Adedoyin, 369 F3d at 344; Mickler, 243 F2d at 516; compare People v Spitaleri, 9 NY2d 168 [1961] [in which the Court of Appeals overruled its prior decision in People v Steinmetz (240 NY 411 [1925]), and held that it was unjust for a court to permit the use of a withdrawn guilty plea as evidence against the defendant]).
The availability of the nolo contendere plea, which cannot be used against a defendant in subsequent litigation, serves the *615 societal purpose of encouraging compromise resolutions of criminal cases by providing the defendant an alternative to pleading guilty or risking a guilty verdict after trial, both of which could be used against him in subsequent litigation (see e.g. Olsen, 189 F3d at 60; United States v Williams, 642 F2d 136, 139 [5th Cir 1981]). Consequently, a conviction resulting from a nolo plea “does not bear the same indicia of reliability as a guilty plea when used as evidence of underlying culpability” (Olsen, 189 F3d at 60 n 8) and thus is insufficient evidence to prove defendant committed the underlying crime or to be used against him in subsequent cases (id. at 60; see also Advisory Comm Notes, 1972 Proposed Rules, Fed Rules Evid rule 410).
There is no decision of which this court is aware that holds that a consent to a finding of abuse or neglect under Family Court Act § 1051 (a) is not admissible as evidence in a subsequent case (cf. Matter of Christopher H. v Lisa H., 54 AD3d 373 [2d Dept 2008] [in which the Court declined to give preclusive effect to a father’s 1051 (a) consent to a finding of sexual abuse or the resulting order of disposition in the father’s subsequent article 6 visitation petition]).[4]
There is also no decision, of which this court is aware, that analogizes a consent to a finding of abuse or neglect under Family Court Act § 1051 (a) to a nolo contendere plea in a criminal case, but the two are substantively and practically identical. A consent to a finding of abuse or neglect is as different from an admission of such conduct as a nolo plea is different from a *616 guilty plea. A respondent who consents to a finding under Family Court Act § 1051 (a) neither admits nor denies that he committed the alleged wrongful acts, just as a criminal defendant pleading nolo contendere neither admits nor denies that he is guilty of the crime charged. The practical benefit of encouraging the voluntary settlements is the same in article 10 cases as in criminal cases.
More fundamentally, in both criminal cases and article 10 proceedings, it would appear to be a violation of basic due process principles to permit facts which have never been proved or admitted in one case to be used as evidence of guilt in a subsequent case. Certainly, such consents cannot constitute “proof” required by Family Court Act § 1051 (a) (i). For these reasons, the mother’s consent to a finding of neglect based upon her misuse of marijuana in Akasha’s case is inadmissible as evidence of neglect in Williams’s case.
Conclusion
For all the foregoing reasons, I find that petitioner failed to prove, by a preponderance of the evidence, that either the mother or the father neglected William, and the petition is dismissed.

. Family Court Act § 1046 (a) (iii) dispenses with the need to prove impairment or risk of impairment in order to establish a prima facie case of neglect upon
“proof that a person repeatedly misuses a drug or drugs or alcoholic beverages, to the extent that it has or would ordinarily have the effect of producing in the user ... a substantial state of stupor, unconsciousness, intoxication, hallucination, disorientation, or incompetence, or a substantial impairment of judgment, or a substantial manifestation of irrationality.”
In effect, section 1046 (a) (iii) establishes a rebuttable presumption of neglect when respondent has engaged in serious, repeated drug or alcohol use that substantially impairs his or her ability to function (see e.g. Matter of Nasiim W. [Keala M.], 88 AD3d 452 [1st Dept 2011]). However, section 1046 (a) (iii) is not applicable where, as here, a respondent repeatedly misuses *606 drugs, but there is no evidence that the respondent’s ability to function or judgment has been substantially impaired (see e.g. Matter of Anastasia G., 52 AD3d 830, 831 [2d Dept 2008]; Matter of Jones v Jones, 34 Misc 3d 1226[A], 2012 NY Slip Op 50257[U] [Fam Ct, Kings County 2012]).

. I use the word “appears” because the petition does not reference Family Court Act § 1046 (a) (i) or use the word “derivative.” However, the petition’s reference to the neglect finding in Akasha’s case and petitioner’s submissions to the court indicate that it is seeking a derivative finding of neglect of William based upon the consent finding entered under Family Court Act § 1051 (a) in Akasha’s case.

. Although the Court in Alford discussed the history and principles of nolo pleas, the case involved something quite different. In Alford, the defendant was indicted for first-degree murder. North Carolina law provided for life imprisonment upon a guilty plea, but the death penalty if a jury returned a guilty verdict after trial. Defendant insisted he was innocent, but chose to enter a guilty plea to avoid the risk of execution. Citing its earlier decision in Hudson v United States (272 US 451 [1926]), which held that there was no constitutional bar to imposition of a prison sentence on a defendant who pleads nolo contendere, thereby neither admitting or denying guilt, the Court in Alford held there was no constitutional impediment to a defendant pleading guilty while protesting his innocence when doing so will serve his interests and the plea is knowing and voluntary. Thus was born what has come to be known as an “Alford” plea.

. In Christopher H., a finding of sexual abuse was entered on the father’s consent pursuant to Family Court Act § 1051 (a), followed by entry of an order of disposition, which required, inter alia, that the father submit to a psychological evaluation, follow the recommendations of the therapist after that evaluation, and attend a sex offender treatment program as frequently as the therapist might determine until discharged by the therapist. The father did as he was required. However, the father’s denial during therapy that he had sexually abused his daughter prompted the therapist to arrange a clinical polygraph examination, which resulted in the examiner issuing a professional opinion that the father’s denials were truthful. As a result, the therapist concluded that the father was not an appropriate candidate for sex offender treatment. The father then brought a visitation petition under article 6 of the Family Court Act and offered the therapist’s report as evidence in support of his petition. The Family Court dismissed the article 6 petition based upon the father’s failure to complete the sex offender program. The appellate court, expressly declined to make a finding as to whether the father had in fact sexually abused his daughter, and held that it was error to dismiss the visitation petition without a best-interest hearing in light of the therapist’s determination that the father was not an appropriate candidate for sex offender treatment.