# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**1430**
**CAF 13-01836**
PRESENT: SCUDDER, P.J., CENTRA, CARNI, AND SCONIERS, JJ.

---

IN THE MATTER OF LACEY-SOPHIA T.-R.
----------------------------------------

JEFFERSON COUNTY DEPARTMENT OF SOCIAL                MEMORANDUM AND ORDER
SERVICES, PETITIONER-RESPONDENT;

ARIELA (T.)W., RESPONDENT-APPELLANT.

---

CARA A. WALDMAN, FAIRPORT, FOR RESPONDENT-APPELLANT.

ARTHUR C. STEVER, IV, WATERTOWN, FOR PETITIONER-RESPONDENT.

JULIA R. CLEMENT, ATTORNEY FOR THE CHILD, HENDERSON HARBOR.

---

Appeal from an order of the Family Court, Jefferson County (Richard V. Hunt, J.), entered September 25, 2013 in a proceeding pursuant to Family Court Act article 10. The order determined that respondent had neglected her child.

It is hereby ORDERED that the order so appealed from is unanimously reversed on the law without costs and the petition is dismissed.

Memorandum: In this proceeding pursuant to Family Court Act article 10, respondent mother contends that, following a hearing, petitioner failed to establish by a preponderance of the evidence that she neglected the subject child. We agree with the mother, and we therefore reverse the order and dismiss the petition.

Petitioner alleged that, on May 30, 2012, the 20-year-old mother left the 1½ -year-old child in the care of the couple with whom the mother and child lived so that the mother could take a trip to Syracuse. Petitioner alleged that the mother did not return as planned and was not available by telephone until June 2, 2012, when she called the couple from the State of Virginia. Petitioner further alleged that the mother did not make an appropriate plan to care for the child during her absence and did not return to care for the child until the police and petitioner intervened on June 5, 2012; that while living with the couple, she went out "partying and drinking"; that she called the child negative and derogatory names and was seen to have physically handled the child roughly on at least one occasion; and that she had possible mental health issues. In support of the petition, a caseworker testified at the hearing that the mother left the child with responsible people with whom she and the child lived; that the mother admitted that she drank alcohol but denied drinking to

the point of intoxication; that the mother admitted that she had been in therapy but denied any mental health concerns; and that the child was removed from the mother's care based upon concerns regarding the mother's instability, possible mental health concerns that were not treated, substance misuse, and because she had left the child with the caregivers "with no real plan for the caregivers to have the child for such a long time."

Both the man and woman with whom the mother and child had lived, and who the parties stipulated were appropriate caregivers, testified with respect to their relationship with the mother. Each of them testified that they knew where the mother was when she went out; that she stayed out all night once or twice but she never came home intoxicated; and that the mother never struck the child, although she was sometimes frustrated with the child. The couple assisted the mother with child care and worked with her on how to care for the child. The woman, a nurse, testified that, on several occasions, the mother appeared to be overwhelmed by the child and that the mother had stated that the couple should have custody of the child. The couple was helping the mother to "get on her feet" and encouraged her to go to Syracuse for an employment opportunity, knowing that she would be gone for several days. They did not know, however, that the mother would be leaving the state, and they were concerned that they lacked any rights with respect to the child in case of a medical emergency. The police were called because the mother's grandmother appeared at the couple's house while the mother was away and demanded that they give her the child, and they knew that the mother did not want her grandmother to care for the child. The mother contacted the couple daily by telephone while she was away. The mother conceded to the caseworker that she should not have gone to Virginia, but noted that she was out of state for only 24 hours. At the close of petitioner's case, the mother moved to dismiss the petition on the ground that there was no evidence that the child was harmed by her actions or was at imminent risk of harm. The Attorney for the Child joined in the motion to dismiss the petition, and Family Court reserved decision. The mother then testified on her own behalf. Following the hearing, the court denied the mother's motion to dismiss the petition and determined that the mother neglected the child.

"[A] party seeking to establish neglect must show, by a preponderance of the evidence . . . , first, that [the] child's physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired and second, that the actual or threatened harm to the child is a consequence of the failure of the parent . . . to exercise a minimum degree of care in providing the child with proper supervision or guardianship" (*Nicholson v Scoppetta*, 3 NY3d 357, 368; *see* Family Ct Act §§ 1012 [f] [i]; 1046 [b] [i]). "Where a motion is made by the respondent at the close of the petitioner's case to dismiss a neglect petition, [the court] must determine whether the petitioner presented a prima facie case of neglect . . . , viewing the evidence in [the] light most favorable to the petitioner and affording it the benefit of every inference which could be reasonably drawn from the proof presented" (*Matter of Christian Q.*, 32 AD3d 669, 670).

We conclude that, viewing the evidence in the light most favorable to petitioner, the evidence established that the mother left the child with appropriate caregivers, who agreed to care for the child for several days; however, she left the state for approximately 24 hours, and she failed to provide a medical authorization in case of an emergency.  Further, although the male caregiver was unable to reach the mother during the confrontation with the mother's grandmother, petitioner's evidence established that the mother had borrowed a telephone and had remained in contact with the caregivers each day that she was away.  The evidence also established that the mother was inexperienced as a parent and that the couple with whom she lived was assisting her with parenting skills and in obtaining appropriate housing, as well as medical and other benefits.

We conclude that petitioner failed to establish that, as a result of the mother's actions, the child was in imminent danger, i.e., "near or impending [danger], not merely possible" (*Nicholson*, 3 NY3d at 369).  We further conclude that petitioner failed to present any evidence connecting the mother's alleged mental health condition to any actual or potential harm to the child (*see Matter of Joseph A. [Fausat O.]*, 91 AD3d 638, 640; *see also Matter of Jesus M. [Jamie M.]*, 118 AD3d 1436, 1437, *lv denied* 24 NY3d 904).  We therefore conclude that petitioner failed to establish by a preponderance of the evidence that the child's physical, mental or emotional condition had been impaired or was in imminent danger of becoming impaired as a result of the mother's failure to exercise a minimum degree of care for the child (*see* Family Ct Act § 1012 [f] [i] [A], [B]; *Matter of Afton C. [James C.]*, 17 NY3d 1, 8-9; *cf. Matter of Elijah NN.*, 66 AD3d 1157, 1159, *lv denied* 13 NY3d 715).

Entered:  February 6, 2015                    Frances E. Cafarell
                                              Clerk of the Court