[950 NE2d 101, 926 NYS2d 365]

In the Matter of AFTON C., a Child Alleged to be Neglected. DUTCHESS COUNTY DEPARTMENT OF SOCIAL SERVICES, Appellant; JAMES C. et al., Respondents. (And Four Other Proceedings.)

Argued March 22, 2011; decided May 5, 2011

## POINTS OF COUNSEL

*James Fedorchak, County Attorney*, Poughkeepsie (*Laura Gail Skojec* of counsel), for appellant. I. The Family Court appropriately found that the parents neglected their children due to the father's status as a level three sex offender who refused sex offender treatment and the mother's failure to protect her

children by allowing him to return to the home without treatment. (*Matter of Katherine C.*, 122 Misc 2d 276; *Nicholson v Scoppetta*, 3 NY3d 357; *Matter of Anthony*, 81 Misc 2d 342; *Matter of Anndrena A.*, 13 AD3d 1164; *Matter of Kenneth V.*, 307 AD2d 767; *Matter of Christopher JJ.*, 281 AD2d 720; *Matter of Tammie Z.*, 66 NY2d 1; *Matter of Mariah CC.*, 302 AD2d 799; *Matter of Child Protective Servs. [Lionel Dunkirk T.]*, 260 AD2d 631; *Matter of Dutchess County Dept. of Social Servs. v Peter B.*, 224 AD2d 617.) II. Actual harm to the subject children is not necessary to establish neglect in cases where an untreated level three sex offender resides in the home and refuses to engage in treatment. (*Matter of Shaun X.*, 300 AD2d 772; *Matter of Anndrena A.*, 13 AD3d 1164; *Matter of Dutchess County Dept. of Social Servs. v Peter B.*, 224 AD2d 617.)

*Ronna L. DeLoe*, Mamaroneck, Attorney for the Child Trevor C. I. The Appellate Division committed reversible error in reversing the Family Court order, which held that the father neglected Trevor C. because the father is an untreated level three sex offender. (*People v Cotto*, 28 AD2d 1116; *Matter of Katrina W.*, 171 AD2d 250, 79 NY2d 976; *Drena v Travelers Ins. Co.*, 192 App Div 703; *Matter of Shaun X.*, 300 AD2d 772; *Matter of Travis Lee G.*, 169 AD2d 769; *Matter of Rebecca KK.*, 40 AD3d 1195, 9 NY3d 811; *Matter of Enrique T. v Annamarie M.*, 15 AD3d 310; *Matter of Kathleen OO.*, 232 AD2d 784; *Matter of Carmen L.*, 37 AD3d 468, 8 NY3d 814; *Matter of Richard S. [Michael S.]*, 72 AD3d 1133.) II. The Appellate Division committed reversible error in ignoring the pressure placed on Trevor C. to recant, which was intensified by his testifying in open court in the presence of his parents and the attorneys. (*Matter of Kayla N.*, 41 AD3d 920; *Matter of Corey C.*, 20 AD3d 736; *Matter of Frantrae W.*, 45 AD3d 412, 10 NY3d 705; *Matter of Lindsey BB. [Ruth BB.]*, 70 AD3d 1205; *Matter of Tristan R.*, 63 AD3d 1075; *Matter of Martha Z.*, 288 AD2d 706; *Matter of Caitlyn U.*, 46 AD3d 1144; *Matter of Ingrid R.*, 18 Misc 3d 1129[A], 2008 NY Slip Op 50240[U].) III. The order denying the motion for reargument is not appealable. (*Cong. Bais Rabbenu v 26 Adar N.B. Corp.*, 282 AD2d 642; *Norton v Kenderes*, 22 AD3d 817; *Weinschneider v Weinschneider*, 50 AD3d 1128.)

*James C.*, respondent pro se. I. The Dutchess County Department of Social Services course of action is preempted by state law. II. The appeal is moot.

*Farber Pappalardo & Carbonari*, White Plains (*John A. Pappalardo* of counsel), Attorney for the Children Afton C. and others. I. Dutchess County Department of Social Services did not meet its burden of establishing harm or imminent risk of harm to the subject children by a preponderance of the evidence. (*Nicholson v Scoppetta*, 3 NY3d 357; *Matter of Kenneth V.*, 307 AD2d 767; *Matter of Kasey C.*, 182 AD2d 1117; *Matter of Dutchess County Dept. of Social Servs. v Peter B.*, 224 AD2d 617.) II. The Appellate Division properly reversed the Family Court finding of neglect as to James C. because Dutchess County Department of Social Services did not prove risk or imminent risk. (*Matter of Krista L.*, 20 AD3d 783; *Matter of Jemila PP.*, 12 AD3d 964; *Matter of Child Protective Servs. [Lionel Dunkirk T.]*, 260 AD2d 631; *Nicholson v Scoppetta*, 3 NY3d 357; *Matter of Travis Lee G.*, 169 AD2d 769; *Matter of Shaun X.*, 300 AD2d 772; *Matter of Kasey C.*, 182 AD2d 1117.) III. The Appellate Division properly reversed the Family Court finding of neglect as to Grace C. (*Matter of Alaina E.*, 33 AD3d 1084; *Matter of Katherine C.*, 122 Misc 2d 276; *Matter of Mariah CC.*, 302 AD2d 799; *Matter of Kayla F.*, 39 AD3d 983.)

*New York Civil Liberties Union Foundation*, New York City (*Andrew L. Kalloch, Corey Stoughton, Christopher Dunn* and *Arthur Eisenberg* of counsel), for New York Civil Liberties Union, amicus curiae. I. Given the fundamental nature of familial rights, due process requires the State, in a neglect proceeding, to make a particularized showing of parental unfitness. (*Troxel v Granville*, 530 US 57; *Wisconsin v Yoder*, 406 US 205; *Quilloin v Walcott*, 434 US 246; *Santosky v Kramer*, 455 US 745; *Matter of Sanjivini K.*, 47 NY2d 374; *Matter of Bennett v Jeffreys*, 40 NY2d 543; *Stanley v Illinois*, 405 US 645; *Meyer v Nebraska*, 262 US 390; *Jacobson v Massachusetts*, 197 US 11; *Prince v Massachusetts*, 321 US 158.) II. The presumption employed in the instant matter is particularly impermissible because New York's sex offender classification system is fundamentally flawed and cannot be relied upon as an indicator of present or future dangerousness for any individual. (*People v Ferrer*, 14 NY3d 709; *People v McFarland*, 29 Misc 3d 1206[A], 2010 NY Slip Op 51705[U].)

*Donald S. Thomson*, Elmira, and *David A. Kagle*, for Chemung County Department of Social Services, amicus curiae. I. A level three sex offender poses a threat to children. II. Exposure of a child to a sex offender constitutes neglect. (*Matter of Mary MM.*, 38 AD3d 956; *Matter of Evelyn B.*, 30 AD3d 913;

*Matter of Michael VV. [Arthur VV.]*, 68 AD3d 1210; *Matter of Anthony Y. [Kelly AA.—Paul AA.]*, 72 AD3d 1419; *Matter of Alaina E.*, 33 AD3d 1084.) III. The mother's and father's failure to exercise a minimum degree of care with respect to their children constituted neglect. (*Matter of Mary MM.*, 38 AD3d 956.)

*Alan P. Reed, County Attorney*, Bath (*Ruth A. Chaffee* of counsel), for Steuben County Department of Social Services, amicus curiae. I. The Appellate Division abused its discretion in reversing the Family Court's decision by limiting its holding of reversal solely on the basis of respondent father's Sex Offender Registration Act classification and a failure to show actual harm. (*Nicholson v Scoppetta*, 3 NY3d 357.) II. The Family Court's findings of neglect are supported by the record and are consistent with prevailing statutes, case law and public policy. (*Matter of Paul P.*, 306 AD2d 653; *Matter of Evelyn B.*, 30 AD3d 913; *Matter of Alaina E.*, 33 AD3d 1084; *Matter of Christopher JJ.*, 281 AD2d 720; *Matter of Christian F.*, 42 AD3d 716; *Matter of Michael VV. [Arthur VV.]*, 68 AD3d 1210; *Matter of Mary MM.*, 38 AD3d 956; *Matter of Paul U.*, 12 AD3d 969; *Matter of Christopher C. [Joshua C.]*, 73 AD3d 1349; *Matter of Anthony Y. [Kelly AA.—Paul AA.]*, 72 AD3d 1419.) III. Courts across the country hold that a sex offender whose underlying crime was committed against a child results in a presumptive finding of neglect or a rebuttable presumption of neglect against such person.

*Morrison & Foerster LLP*, New York City (*Matthew M. D'Amore* of counsel), and *Lawyers for Children, Inc.* (*Betsy Kramer* of counsel) for Lawyers for Children, amicus curiae. I. The due process rights of parents and their children require a finding of neglect to be based on an individualized determination of actual or imminent harm. (*Santosky v Kramer*, 455 US 745; *Troxel v Granville*, 530 US 57; *Kia P. v McIntyre*, 235 F3d 749; *Wooley v City of Baton Rouge*, 211 F3d 913; *Franz v United States*, 707 F2d 582; *Stanley v Illinois*, 405 US 645; *Prince v Massachusetts*, 321 US 158; *Moore v East Cleveland*, 431 US 494; *Mathews v Eldridge*, 424 US 319; *Vlandis v Kline*, 412 US 441.) II. A presumption of harm based on a parent's criminal status ignores the statutory and precedential mandates to identify the actual relationship between the crime committed and the risk of harm to the offender's children. (*Nicholson v Scoppetta*, 3 NY3d 357; *Matter of Marie B.*, 62 NY2d 352.)

*Stephen M. Dorsey, County Attorney,* Ballston Spa (*Karen E.S. D'Andrea* of counsel), and *Roger A. Wickes, County Attorney,* Fort Edward (*Daniel S. Martindale* of counsel), for Saratoga County Department of Social Services and another, amici curiae. I. The father's status as a level three sex offender who refused to engage in sex offender treatment and the mother's failure to protect the children by allowing him to return to the home did prove neglect by a preponderance of the evidence. (*Nicholson v Scoppetta,* 3 NY3d 357; *Matter of Michael VV. [Arthur VV.],* 68 AD3d 1210; *Matter of Karissa NN.,* 19 AD3d 766; *Matter of Cornell v Cornell,* 290 AD2d 735; *Matter of Christopher C. [Joshua C.],* 73 AD3d 1349; *Matter of Neithan CC.,* 56 AD3d 1000; *Matter of Sean K.,* 50 AD3d 1220; *Matter of Kole HH.,* 61 AD3d 1049; *Matter of Cadejah AA.,* 33 AD3d 1155; *Matter of Heather J.,* 244 AD2d 762.) II. It is not necessary to show that the children suffered actual harm to establish neglect in cases where an untreated level three sex offender resides in the home and refuses to engage in treatment. (*Matter of Carlena B.,* 61 AD3d 752; *Matter of Jesus JJ.,* 232 AD2d 752; *Matter of Chianti FF.,* 205 AD2d 849; *Matter of Michelle F.,* 222 AD2d 747.)

### OPINION OF THE COURT

CIPARICK, J.

On this appeal, we consider whether there is sufficient evidence to support a finding that the subject children are neglected pursuant to article 10 of the Family Court Act. We agree with the Appellate Division that the evidence presented is insufficient to prove neglect.

In October 2007, respondent father pleaded guilty to rape in the second degree, engaging in sexual intercourse with a person less than 15 years of age (Penal Law § 130.30 [1]), and patronizing a prostitute in the third degree, which at the time of his conviction was defined as patronizing a prostitute under 17 years of age (former Penal Law § 230.04; L 2007, ch 74, § 5). He was sentenced to one year imprisonment, and was released on time served. The court adjudicated father a level three sex offender under the Sex Offender Registration Act (SORA), but he was never ordered to attend any sex offender treatment. Father returned home, where he lived with his wife and their five children, then between the ages of 4 and 14.

In November 2007, the Dutchess County Department of Social Services (DSS) filed neglect petitions pursuant to Family Court Act article 10 against both parents. As relevant here, the

petitions alleged that father neglected the children because he was an "untreated" sex offender whose crimes involved victims between 13 and 15 years old.[1] Mother allegedly "failed to protect the children" from father. DSS sought to have the children adjudicated neglected, both parents ordered into a sex offender relapse intervention program, and a temporary order of protection issued against father on the children's behalf.[2]

At the fact-finding hearing, the DSS caseworker who authored the neglect petitions testified that he began investigating the family after receiving a report from the SORA registry that father was an untreated level three sex offender. He did not receive any documentation from the New York County District Attorney's office regarding father's conviction, and had not interviewed any of the victims in that case. The caseworker acknowledged that he had no evidence that father was sexually inappropriate with any of the subject children.

Father testified that he "pled guilty to what ever [his] lawyer told [him] to plead guilty to," and recalled that, during his plea colloquy, he had affirmed that he committed the crimes. He explained that the indictment had alleged that he patronized a prostitute "between 2000 and 2004," when she was 15 to 19, but testified that he first met the victim in 2003, when she was 18. Father claimed that when he was asked during his plea colloquy "whether [he] engaged in sexual acts with her between 2000 and 2004 [he] said yes meaning . . . when she was 18 or 19." With respect to the second degree rape conviction, father refused to comment on whether he had sexual relations with someone below the age of consent, exercising his Fifth Amendment right. Family Court permitted him not to answer, but drew a "negative inference . . . that the victim was under the age of consent." Father further testified that, other than the events resulting in his conviction, he had never had "intercourse with an under age woman." He acknowledged that he was a level three sex offender under SORA, and had never received sex offender treatment.

Mother testified that she had "no . . . personal knowledge" of father's crimes, beyond knowing what he had pleaded to, and

1. The petitions also alleged that father "engaged in excessive corporal punishment" of his children. Family Court found that DSS "failed to prove . . . that the children's physical, mental or emotional condition has been impaired as a result of excessive corporal punishment." DSS did not appeal that determination, and it is not before us.

2. Family Court issued an order of protection, requiring father to vacate the home. That order is likewise not before us.

had not inquired into the details. She did not think father was a risk to their children because "he has never engaged in any behavior . . . that would create a risk to his children." Other witnesses included the eldest child and a school resource officer. DSS proffered father's certificate of conviction, but no additional evidence was submitted regarding the facts underlying the conviction.

Family Court concluded that both parents neglected their children. It found that father's behavior created a substantial risk of harm to the children because he is a convicted level three sex offender, and therefore "pose[s] a risk of harm to the public at large." His testimony, in the court's view, demonstrated a "lack of candor, a shortage of insight into his own behavior and . . . obvious attempts to avoid responsibility for the illegal acts involving minors." Moreover, the court saw father's "failure to address any issues in counseling [as] demonstrat[ing] an 'impaired level of parental judgment as to create a substantial risk of harm' " (quoting *Matter of Shaun X.*, 300 AD2d 772, 772 [3d Dept 2002]). The court's finding that mother had neglected the children was based on her "failure to inquire into the details of the father's illegal conduct and her decision to gauge the children's safety by her knowledge of the father." Both parents appealed the finding of neglect.

The Appellate Division reversed the Family Court order, denied the petitions, and dismissed the proceedings, holding that "[t]he mere fact that a designated sex offender resides in the home is not sufficient to establish neglect absent a showing of actual danger to the subject children" (*Matter of Afton C. [James C.]*, 71 AD3d 887, 888 [2d Dept 2010]). The court added that although Family Court could properly consider whether father's testimony was evasive and that he invoked his Fifth Amendment right, "the evidence was insufficient to establish that the father posed an imminent danger to the children" (*id.*). Because DSS failed to prove that father's presence endangered the children, the court found that, by extension, mother did not neglect them by allowing him to reside in the home (*see id.*). We granted DSS's motion for leave to appeal from the Appellate Division order (15 NY3d 709 [2010]), and now affirm.

Under section 1012 (f) of the Family Court Act, a neglected child is defined as, inter alia:

"a child less than eighteen years of age

"(i) whose physical, mental or emotional condition

has been impaired or is in imminent danger of becoming impaired as a result of the failure of his parent or other person legally responsible for his care to exercise a minimum degree of care . . .

"(B) in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or a substantial risk thereof" (Family Ct Act § 1012 [f] [i] [B]).

The statute thus imposes two requirements for a finding of neglect, which must be established by a preponderance of the evidence (*see* Family Ct Act § 1046 [b] [i]). First, there must be "proof of actual (or imminent danger of) physical, emotional or mental impairment to the child" (*Nicholson v Scoppetta*, 3 NY3d 357, 369 [2004]). In order for danger to be "imminent," it must be "near or impending, not merely possible" (*id.*). Further, there must be a "causal connection between the basis for the neglect petition and the circumstances that allegedly produce the . . . imminent danger of impairment" (*id.*). This requirement is intended to "focus [neglect proceedings] on serious harm or potential harm to the child, not just on what might be deemed undesirable parental behavior" (*id.*).

Second, any impairment, actual or imminent, must be a consequence of the parent's failure to exercise a minimum degree of parental care (*see* Family Ct Act § 1012 [f] [i]; *see also Nicholson*, 3 NY3d at 368). This is an objective test that asks whether "a reasonable and prudent parent [would] have so acted, or failed to act, under the circumstances" (*id.* at 370). A parent may deviate from this standard by "unreasonably inflicting . . . a substantial risk" of harm to the child (Family Ct Act § 1012 [f] [i] [B]). Critically, however, "the statutory test is *minimum* degree of care—not maximum, not best, not ideal—and the failure must be actual, not threatened" (*Nicholson*, 3 NY3d at 370 [internal quotation marks omitted]).[3]

DSS and the attorney for the eldest child argue that because father is an untreated, level three sex offender whose crimes

---

**3.** Notably, these statutory requirements have constitutional underpinnings:

"Fundamental constitutional principles of due process and protected privacy prohibit governmental interference with the liberty of a parent to supervise and rear a child except upon a showing of overriding necessity. . . . [Thus,] the State may not deprive a natural parent of the right to the care and custody of a child absent a demonstration of . . . behavior evincing utter indifference and irresponsibility to the child's well-being" (*Matter of Marie B.*, 62 NY2d 352, 358 [1984]).

involved minors, and because he failed to demonstrate sufficient introspection or remorse, the children were properly adjudicated neglected. DSS also maintains that mother neglected the children by allowing him to return home. In response, father and the attorney for the other four children argue that DSS failed to prove that either parent neglected their children.[4]

To the extent that DSS is arguing that father's status as a level three sex offender convicted of sex crimes involving minors is sufficient to establish a presumption that he poses a danger to his children in the absence of treatment, we disagree. In *Nicholson*, we rejected use of a presumption of neglect where a parent had allowed a child to witness domestic violence, holding that this bare allegation did not meet the Family Court Act's requirements (*see* 3 NY3d at 371). We emphasized that a finding of neglect was only permissible where a preponderance of evidence established actual or imminent harm to the subject children as a result of the parent's failure to exercise a minimal degree of care (*see id.* at 372). For similar reasons, we now reject any presumption that an untreated sex offender residing with his or her children is a neglectful parent. Even where, as here, the offender's crimes involve victims younger than 18, that alone does not demonstrate that his actions "inflicted harm, or a substantial risk thereof" to his children, or that the children's "physical, mental or emotional condition . . . [was] in imminent danger of becoming impaired" (Family Ct Act § 1012 [f] [i] [B]).

DSS argues that because father is a level three sex offender under SORA, and has therefore been deemed particularly likely to reoffend (*see* Correction Law § 168-*l* [5], [6] [c]), he is a danger to the subject children. SORA assessment was not designed, however, to ascertain whether the offender has met the Family Court Act's parental neglect standard. Here, even assuming that a level three SORA assessment is evidence of

---

4. Additionally, father argues that this appeal is moot, since (1) he has already submitted to a psychological assessment which determined that he was not a risk to his own children, (2) his wife has moved to Canada with the four younger children and has no intention of returning, while his felony conviction prevents him from entering Canada, and (3) the proceeding involving the eldest child became moot when the child turned 18 during the course of this appeal. While we agree that the proceeding regarding the 18 year old is now moot, the other four are not. That mother and the children are in Canada does not render these proceedings moot, since they may return. Father's submission to psychological evaluation creates no mootness concern, as DSS seeks to have the children adjudicated neglected and father entered into a treatment program.

likely recidivism, DSS failed to prove that father's crimes endangered his children. It follows that the likelihood of a repeat offense—which is all SORA purports to measure—is not directly relevant to whether the children are in imminent danger. While DSS could have introduced evidence from the plea and SORA proceedings, it did not do so, and the SORA designation alone is not dispositive.

No doubt there are circumstances in which the facts underlying a sex offense are sufficient to prove neglect. Where, for example, sex offenders are convicted of abusing young relatives or other children in their care, their crimes may be evidence enough (*see e.g. Matter of Christopher C. [Joshua C.]*, 73 AD3d 1349, 1351 [3d Dept 2010]; *Matter of Shaun X.*, 300 AD2d at 772-773). Our conclusion here might also be different if respondent had refused sex offender treatment after being directed to participate in it, or if other evidence showed that such treatment was necessary. In all cases, however, petitioner must meet its statutory burden. It failed to do so here.

DSS proved only father's conviction; that he was adjudicated a SORA level three sex offender; that he never sought sex offender treatment; and that he was residing at home. This evidence, without more, does not demonstrate that father breached a minimum duty of parental care and poses a near or impending harm to his children. That he declined to discuss the circumstances of his conviction and, in Family Court's view, lacked candor or insight into his behavior does not fill the evidentiary gap.

Because DSS failed to prove by a preponderance of the evidence that father posed an imminent danger to his children, it necessarily failed to prove that mother neglected the children by allowing father to return home.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

GRAFFEO, J. (concurring). I concur with the result reached by the majority but write separately to clarify why the evidence of neglect was insufficient in this case. As is clear from the majority opinion, this is not an area of law amenable to bright-line rules. Rather, whether neglect has been established during a proceeding turns on the particular facts and circumstances proven at the hearing. Here, the determination of insufficiency stems from the manner in which county social services chose to present its proof—there is no general principle of law that

dictated this result. For this reason, I doubt that our holding in this case will have broad precedential value—but it does highlight the need for an adequate evidentiary basis before a finding of neglect can be entered.

In essence, the county relied almost entirely on the fact that the father had been convicted of certain criminal offenses and that he had been adjudicated a level three sex offender to support the inference that he posed an imminent threat of harm to his children and, concomitantly, that the mother was neglecting the children by failing to protect them from the father. Yet the county submitted only the certificate of conviction and did not offer any evidence detailing the facts underlying the criminal convictions. The record does not contain any accusatory instruments, witness statements or even the transcript from the plea or sentencing proceedings in the criminal case. The county's attempts to develop proof concerning the criminal acts through questioning of the father were, not surprisingly, of limited value given his reluctance to provide details that might have substantiated the county's case.

Nor did the county offer any evidence establishing the basis for the father's designation as a level three sex offender. For example, the county did not submit any materials from the hearing held under the Sex Offender Registration Act (SORA), such as the risk assessment instrument or hearing transcript, that would have revealed the factors on which the SORA court relied in making that adjudication. The facts underlying that finding may have supported an inference that the father posed a threat of harm—but they do not appear in the record of this neglect proceeding.

Finally, the county failed to present evidence, expert or otherwise, explaining how the father's criminal history indicated that he posed a risk of harm to his children. In fact, it remains unclear whether the neglect petition was filed because the county social services agency feared that the father would sexually offend against his own children or believed a neglect finding was warranted on the theory that his criminal conduct reflected such a profound lack of judgment on his part that it demonstrated an inability to properly fulfill his parental role. Even the caseworker who initiated the petition neglected to clarify the nature of the imminent risk he believed these parents posed to their children.

By detailing the absence of evidence in this case, I do not mean to suggest that proof of each type must be offered in every

neglect proceeding similar to this one. If some of these gaps had been filled, the evidence might have risen to the sufficiency threshold. On this record, however, the neglect findings were not sufficiently supported and the Appellate Division order dismissing the petitions must be affirmed.

Chief Judge LIPPMAN and Judges READ, SMITH, PIGOTT and JONES concur with Judge CIPARICK; Judge GRAFFEO concurs in result in a separate opinion.

Order affirmed, with costs.