Malone Jr., J.
Respondent is the father of a daughter (born in 2005) and a son (born in 2008). In 2010, petitioner, the attorney for the children, commenced this proceeding against respondent alleging that he had neglected the children because he was a sex offender who had refused treatment and had violated the terms of his probation.[1] Respondent and the Clinton County Department of Social Services (hereinafter DSS) opposed the petition and moved to dismiss it. Following a fact-finding hearing,[2] Supreme Court, among other things, adjudicated the subject children to be neglected by respondent. Respondent appeals.
As is relevant here, petitioner, as the party seeking to establish neglect, bore the burden of establishing, by a preponderance of the evidence, first that the children’s “physical, mental or emotional condition [was] impaired or [was] in imminent danger of becoming impaired” and, second, that such harm was *909 directly attributable to a failure on the part of respondent “to exercise a minimum degree of care ... in providing the [children] with proper supervision or guardianship” (Family Ct Act § 1012 [f] [i] [B]; see Family Ct Act § 1046 [b] [i]; Nicholson v Scoppetta, 3 NY3d 357, 368 [2004]). “In order for danger to be ‘imminent,’ it must be ‘near or impending, not merely possible’ . . . [and] there must be a ‘causal connection between the basis for the neglect petition and the circumstances that allegedly produce the . . . imminent danger of impairment’ ” (Matter of Afton C. [James C.], 17 NY3d 1, 9 [2011], quoting Nicholson v Scoppetta, 3 NY3d at 369). Further, any impairment to the children “must be clearly attributable to the unwillingness or inability of the respondent to exercise a minimum degree of care toward” them (Family Ct Act § 1012 [h]), rather than what may be deemed “undesirable parental behavior” (Nicholson v Scoppetta, 3 NY3d at 369). Indeed, “the statutory test is ‘minimum degree of care’ — not maximum, not best, not ideal” (id. at 370). With those standards in mind, upon a review of this record, there must be a reversal of Supreme Court’s finding of neglect as to respondent.
Initially, contrary to petitioner’s contentions, respondent’s status as a registered risk level II sex offender does not constitute per se neglect or otherwise create a presumption of neglect (see Matter of Afton C., 17 NY3d at 10). Moreover, the evidence does not support a finding that respondent is an untreated sex offender inasmuch as the record shows that he successfully completed sex offender treatment programs in 2007 and 2008, more than two years prior to the filing of the instant neglect petition, and there is no suggestion that he has committed any further sex-related offenses since the offense in 2004. Supreme Court’s conclusion that respondent did not meaningfully benefit from his participation in those programs was belied by testimony of one of his counselors, and was based solely upon the court’s own belief that the counselors in the most recent program attended by respondent, to which he was referred by DSS, were not sufficiently qualified to run a meaningful or successful program. The court’s finding in that regard is not supported by any evidence in the record.
As for petitioner’s allegation that respondent violated the terms of his probation, it was undisputed that, despite a term of his probation that prohibited him from consuming alcohol, respondent was convicted of driving while ability impaired in 2006 and driving while intoxicated in 2007. However, this conduct occurred before the 2007 neglect proceeding, and there was no evidence that these convictions were not already submit *910 ted as evidence in that proceeding. In any event, that conduct preceded the instant petition by two years, and petitioner failed to refute respondent’s claim that he had not consumed alcohol since his 2007 conviction. Further, while it was also undisputed that respondent had presented his probation officer with falsified attendance slips for some Alcoholics Anonymous meetings, there was no evidence as to how this conduct — although certainly not to be condoned — rose to the level of creating any actual or imminent danger of impairment to the children sufficient to warrant a finding of neglect under these circumstances.
The record reflects that, other than the incident regarding his falsification of the attendance slips, respondent’s conduct since the 2007 neglect proceeding has improved, and he has not been under DSS supervision since 2008 or probation supervision since 2009 — more than one year prior to the instant neglect petition. As petitioner conceded, while respondent was under DSS supervision, he complied with all court orders and recommendations. Notably, DSS was aware of the overall family situation and, as early as 2009, approved respondent’s unsupervised visitation with his children. In 2010, DSS approved of his taking custody of the children and his stepchildren and, in fact, actively opposed the instant petition. Under the particular circumstances presented here, while respondent’s overall conduct historically has been, at times, troubling, petitioner has failed to demonstrate that such conduct constituted the neglect of his children.
Peters, P.J., Spain, Kavanagh and Garry, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as found that respondent neglected his children; petition against respondent dismissed; and, as so modified, affirmed.

. While there is no order in the record, it appears that upon the reluctance of the Clinton County Department of Social Services to file the within petition, Family Court — pursuant to Family Ct Act § 1032 (b) — directed the attorney for the children to file and litigate the petition.

. Prior to the commencement of this proceeding against respondent, two Family Ct Act article 10 proceedings were commenced against the mother, one by DSS and the other by petitioner, apparently at the direction of Family Court. Those two proceedings were resolved in the order appealed from but are not at issue on this appeal.