# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

77

CAF 13-00371

PRESENT: CENTRA, J.P., FAHEY, LINDLEY, SCONIERS, AND WHALEN, JJ.

IN THE MATTER OF RAVEN B.
-----------------------------------------------
OSWEGO COUNTY DEPARTMENT OF SOCIAL SERVICES,     MEMORANDUM AND ORDER
PETITIONER-APPELLANT;

MELISSA K.N., RESPONDENT-RESPONDENT.

NELSON LAW FIRM, MEXICO (ANNALISE DYKAS OF COUNSEL), FOR
PETITIONER-APPELLANT.

LINDA M. CAMPBELL, SYRACUSE, FOR RESPONDENT-RESPONDENT.

--------------------------------------------------------------------------------

Appeal from an order of the Family Court, Oswego County (Kimberly
M. Seager, J.), entered February 11, 2013 in a proceeding pursuant to
Family Court Act article 10.  The order dismissed the petition.

It is hereby ORDERED that the order so appealed from is
unanimously reversed on the law without costs, the petition is
granted, respondent is adjudicated to have neglected the subject child
and the matter is remitted to Family Court, Oswego County, for a
dispositional hearing.

Memorandum:  Since December 2010, petitioner, Oswego County
Department of Social Services (DSS), had been visiting the apartment
in which respondent mother had been living, and had been providing the
mother with various services, including substance abuse treatment,
parenting and preventative services, food vouchers, and housing
support.  At the time of the incident precipitating the instant
neglect petition, i.e., May 28, 2012, the mother had been responsible
for the care of the child for only a short time inasmuch as the child
had been discharged from foster care on a trial basis in December 2011
and fully discharged on March 29, 2012.  On the morning of the
incident, while the mother was taking a nap, the child—then 3½ years
old—left the apartment on her own, wandered approximately 1½ blocks
away, and was eventually found by a neighbor, who took the child into
her home and then assisted the police in attempting to locate the
child's caretaker.  After an unsuccessful search for the child's home,
the responding police officer received the mother's address from his
supervisor.  Upon arriving at that address, he proceeded through an
open door at the back of the residence onto a porch, loudly announced
the presence of the police several times, went through a second open
door leading to a stairway, again announced his presence, and then
entered a third open door at the top of the stairs leading into the
mother's apartment.  After the police officer again announced his

presence, the mother awoke and exited her bedroom, at which point the officer informed her that her child had been located down the street.

On May 29, 2012, the child was temporarily removed from the mother's care with the mother's consent pursuant to Family Court Act § 1021 and, following a hearing pursuant to section 1027, Family Court ordered that the child be released to the mother's custody. On June 1, 2012, DSS filed the instant petition alleging that the child was neglected because she was placed at imminent risk of physical, emotional or mental harm by the mother's failure to exercise a minimum degree of care in providing the child with proper supervision, and the mother's failure to maintain a safe and sanitary residence. Following a fact-finding hearing, the court held that DSS had failed to prove by a preponderance of the evidence that the child was neglected, and DSS appeals from the order dismissing the petition. Inasmuch as we conclude that the court's determination lacks a sound and substantial basis in the record, we reverse the order, grant the petition, and remit the matter to Family Court for a dispositional hearing (*see generally Matter of Gada B. [Vianez V.]*, 112 AD3d 1368, 1369).

As an initial matter, we note that the mother was present at the fact-finding hearing, but failed to testify or present any proof. We "thus . . . draw the 'strongest inference [against her] that the opposing evidence permits' " (*Matter of Jayden B. [Erica R.]*, 91 AD3d 1344, 1345, quoting *Matter of Nassau County Dept. of Social Servs. v Denise J.*, 87 NY2d 73, 79).

As relevant to the first basis for neglect alleged in the petition, a neglected child is defined as a child less than 18 years of age "whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his [or her] parent . . . to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or a substantial risk thereof" (Family Ct Act § 1012 [f] [i] [B]). As the Court of Appeals has explained, "[t]he statute . . . imposes two requirements for a finding of neglect, which must be established by a preponderance of the evidence . . . First, there must be proof of actual (or imminent danger of) physical, emotional or mental impairment to the child . . . Second, any impairment, actual or imminent, must be a consequence of the parent's failure to exercise a minimum degree of parental care . . . This is an objective test that asks whether a reasonable and prudent parent [would] have so acted, or failed to act, under the circumstances" (*Matter of Afton C. [James C.]*, 17 NY3d 1, 9 [internal quotation marks omitted]). Moreover, it is well established that "the statutory requirement of imminent danger . . . does not require proof of actual injury" (*Matter of Ruthanne F.*, 265 AD2d 829, 830), and that "[a] single incident where the parent's judgment was strongly impaired and the child exposed to a risk of substantial harm can sustain a finding of neglect" (*Matter of Serenity P. [Shameka P.]*, 74 AD3d 1855, 1856 [internal quotation marks omitted]; *see Matter of Antonio NN.*, 28 AD3d 826, 827).

With regard to the first requirement for a finding of neglect

based on lack of proper supervision, there is no dispute that the 3½-year-old child was in imminent danger of physical, emotional, or mental impairment when she left the apartment and wandered the streets unsupervised until she was discovered by a neighbor (*see Antonio NN.*, 28 AD3d at 826-828; *Matter of Jonathan B.*, 270 AD2d 42, 42, *lv denied* 95 NY2d 765, *rearg denied* 96 NY2d 755; *see also Serenity P.*, 74 AD3d at 1855-1856), and that there was a "causal connection between the basis for the neglect petition and the circumstances that allegedly produce[d] the . . . imminent danger of impairment" (*Nicholson v Scoppetta*, 3 NY3d 357, 369).

With regard to the second requirement for a finding of neglect based on lack of proper supervision, we conclude that DSS established by a preponderance of the evidence that the imminent danger of impairment was the consequence of the mother's failure to exercise a minimum degree of parental care. "A child may be found to be neglected when the parent knew or should have known of circumstances requiring action to avoid harm or the risk of harm to the child and failed to act accordingly" (*Matter of Brian P. [April C.]*, 89 AD3d 1530, 1530; *see Antonio NN.*, 28 AD3d at 827). Here, the evidence was sufficient to meet that standard (*see Antonio NN.*, 28 AD3d at 826-828). Specifically, the evidence established that the outer door leading onto the porch was generally not locked, that the second door leading to the stairway was not always locked or that the lock was broken, and that the door leading into the apartment at the top of the stairs was never locked or that the lock was broken. The evidence also established that the mother was aware that the child was able to traverse the stairway and access the porch; thus, the mother knew, or should have known, that the child was able to open and go through unlocked doors. Following a visit from a DSS caseworker who observed the child going through the doors and traversing the stairs multiple times unsupervised and without the mother noticing, the mother was warned by the caseworker that it would be inappropriate and unsafe to allow the child to continue to do so. That knowledge, coupled with the evidence that the outer door was often unlocked or that the lock was broken, would lead a reasonably prudent parent to lock the door or otherwise act to ensure that his or her child could not get outside unsupervised before the parent fell asleep (*see Afton C.*, 17 NY3d at 9). The mother's contention that there was no evidence that the child had a propensity to go through the outer door and leave the building entirely is therefore of little consequence. Drawing the strongest inference against the mother that the opposing evidence permits (*see Jayden B.*, 91 AD3d at 1345), the mother should have known, at least, that the child had the ability to open an unlocked door, which could afford her the means of exiting the apartment on her own if left unsupervised.

Thus, although the hearing court's determinations are entitled to great deference (*see generally id.*), we conclude that the court erred in holding that DSS failed to establish, by a preponderance of the evidence, that the single incident at issue was sufficient to constitute neglect. To the contrary, we conclude that the mother was aware, or should have been aware, of the intrinsic danger of going to sleep without ensuring that the child would remain securely in the

apartment (*see Antonio NN.*, 28 AD3d at 827-828).  There is no evidence that the mother suffered from any physical ailment that prevented her from properly supervising the child, nor is there any evidence that the mother took proactive steps, such as locking the door, using a child lock, or obtaining a caregiver, to prevent the child from leaving the apartment while the mother slept during the day (*cf. Matter of Janique Y.*, 256 AD2d 1053, 1054).  We therefore conclude that petitioner met its burden of establishing that the imminent impairment of the child's physical, emotional, or mental condition was a consequence of the mother's failure to exercise a minimum degree of parental care (*see generally* Family Ct Act § 1012 [f] [i]; *Nicholson*, 3 NY3d at 368).

As relevant to the second basis for neglect alleged in the petition, a neglected child is defined as a child less than 18 years of age "whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his [or her] parent . . . to exercise a minimum degree of care . . . in supplying the child with adequate food, clothing, [or] shelter . . . though financially able to do so or offered financial or other reasonable means to do so" (Family Ct Act § 1012 [f] [i] [A]).  We conclude that the court's determination that the child was not neglected based on the condition of the mother's apartment lacks a sound and substantial basis in the record.

The evidence at the fact-finding hearing established that, in March 2012, there were several garbage bags on the porch, and in the kitchen and living room; there was a mound of toys covering the living room floor; and there were dirty dishes both overflowing the kitchen sink and stacked next to the toilet in the bathroom.  In addition, the freezer was full of ice; the bottom drawer of the refrigerator contained moldy fruit floating in several inches of dirty water; and the bathroom sink was filled with a grayish-brown substance which appeared moldy and gel-like.  Moreover, the evidence established that in the living room, where the child slept, cat litter and feces were in and around a large trash can lid, which was accessible to the child because the child gate in front of it was not properly secured.  There was also a litter box containing cat feces in the living room, and the only barrier preventing the child's access thereto was a lawn chair.  Importantly, there was evidence that the mother had previously admitted that the child had been exposed to cat feces in the past and that the mother had been warned about the safety hazards of failing to prevent the child's access to the litter and feces.  There was also evidence that the child had access to the large quantities of garbage within the apartment and, during one visit by a DSS caseworker, the child was observed wearing no pants or underwear, with a disposable razor cover stuck between her buttocks.  Under the above circumstances, we conclude that the unsanitary and unsafe condition of the mother's apartment posed an imminent danger of impairment to the child's physical, mental, or emotional condition (*see Matter of Sean K.*, 50 AD3d 1220, 1221; *Matter of Aiden L.*, 47 AD3d 1089, 1090; *Matter of Brian TT.*, 29 AD3d 1228, 1229; *Matter of Mary S.*, 279 AD2d 896, 898).

The court's conclusion that "the conditions in [the mother's] apartment lasted no longer than March 19th through March 26th" is unsupported by the evidence. Indeed, the evidence established that the apartment had been in deplorable condition on more than one occasion in May 2012 (*cf. Matter of Iyanah D.*, 65 AD3d 927, 927-928), including when a DSS caseworker conducted a visit and noted that the foul odor of the apartment nauseated her, and when the police officer entered the apartment on May 28, 2012 and observed garbage and clothes scattered throughout the apartment, as well as flies in the kitchen, and smelled a strong, foul odor (*see Sean K.*, 50 AD3d at 1221; *Aiden L.*, 47 AD3d at 1090; *Mary S.*, 279 AD2d at 898). The court's conclusion that the child had not been exposed to those conditions is unsupported by the evidence, and the mother's further contention that the unsafe and unsanitary condition of the apartment was transient "is not only at odds with the state of the apartment as described by [DSS's] caseworker, but also strongly suggests that she [did] not appreciate or recognize the imminent threat the[ ] conditions posed to her [3½-year-old daughter]" (*Aiden L.*, 47 AD3d at 1090). We therefore conclude that the court's determination—that the unsafe and unsanitary condition of the mother's apartment, on numerous occasions, did not place the child's physical, mental, or emotional state in imminent danger of impairment—is not supported by a sound and substantial basis in the record (*see generally Gada B.*, 112 AD3d at 1369).

Entered: March 28, 2014                       Frances E. Cafarell
                                              Clerk of the Court