Appeal from an order of the Family Court, Genesee County (Eric R. Adams, J.), entered November 2, 2015 in a proceeding pursuant to Family Court Act article 10. The order, inter alia, determined that respondent had neglected the subject child.
 

 It is hereby ordered that the order so appealed from is unanimously affirmed without costs.
 

 Memorandum: In these consolidated appeals arising from combined proceedings pursuant to Family Court Act article 10, respondent mother appeals in appeal Nos. 1 and 2 from orders that, respectively, adjudicated her children Kaylee D. and Damien M. to be neglected. We affirm.
 

 As an initial matter, the mother’s contention in both appeals that she was denied a fair hearing on the ground that Family Court was biased against her is not preserved for our review inasmuch as she failed to make a motion requesting that the court recuse itself (see Matter of Shonyo v Shonyo, 151 AD3d 1595, 1596 [2017]; Matter of Curry v Reese, 145 AD3d 1475, 1476 [2016]). In any event, that contention lacks merit. The court was within its “broad authority” when it questioned witnesses, interrupted to elicit and clarify testimony, and admonished the mother and her counsel during the mother’s testimony (Matter of Emily A. [Gina A.], 129 AD3d 1473, 1474 [2015] [internal quotation marks omitted]; see Matter of Rasyn W., 270 AD2d 938, 938 [2000], lv denied 95 NY2d 766 [2000]). We therefore conclude, contrary to the mother’s contention, that “[t]he record does not establish that the court was biased or prejudiced against [her]” (Rasyn W., 270 AD2d at 938; see Curry, 145 AD3d at 1476).
 

 A neglected child is defined as a child less than 18 years of age “whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his [or her] parent ... to exercise a rmrnrrmm degree of care ... in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or a substantial risk thereof” (Family Ct Act § 1012 [f] [i] [B]). As the Court of Appeals has explained, “[t]he statute . . . imposes two requirements for a finding of neglect, which must be established by a preponder-anee of the evidence . . . First, there must be proof of actual (or imminent danger of) physical, emotional or mental impairment to the child . . . Second, any impairment, actual or imminent, must be a consequence of the parent’s failure to exercise a minimum degree of parental care . . . This is an objective test that asks whether a reasonable and prudent parent [would] have so acted, or failed to act, under the circumstances” (Matter of Afton C. [James C.], 17 NY3d 1, 9 [2011] [internal quotation marks omitted]). “Moreover, it is well established that ‘the statutory requirement of imminent danger . . . does not require proof of actual injury’. . . , and that ‘[a] single incident where the parent’s judgment was strongly impaired and the child exposed to a risk of substantial harm can sustain a finding of neglect’ ” (Matter of Raven B. [Melissa K.N.], 115 AD3d 1276, 1278 [2014]).
 

 Here, we conclude that the court properly determined that the child in each appeal was neglected as the result of an incident that took place in the early morning of October 18, 2014. The testimony of petitioner’s witnesses, which was credited by the court, established that the police were dispatched at approximately 5:22 a.m. to respond to a report that a female was yelling at her children in front of a residence and that the children were crying. Upon arriving at the scene, a police officer observed the mother and her 5V2-year-old daughter and 11-year-old son standing in front of a residence. The children were dressed in light coats, pajamas, and sneakers in weather conditions that the officer described as being 45 degrees with moderate rain. In response to the officer’s inquiry regarding the mother’s reason for being outside with the children in such conditions, the mother stated that “it was a beautiful, stormy morning” and that she was “just out for a beautiful walk.” The officer noticed that the mother was lethargic, her eyes were “droopy,” she did not respond coherently to many of the officer’s questions, and she entirely failed to respond to some of his inquiries while simply staring at him blankly. Based upon his training and experience, the officer suspected that the mother was under the influence of a narcotic. The children reported that the mother had engaged in bizarre behavior that morning, including waking them up, telling them that they had to leave their residence because of an emergency, and instructing them to carry a cardboard box filled with various items. Those statements were corroborated by the officer’s observations of the mother’s behavior and the fact that the mother and the children had in their possession a box containing telephone and cable wire, a damaged corrugated dryer vent, and water heater pipes (see Family Ct Act § 1046 [a] [vi]; see generally Matter of Z’naya D.J. [Vanessa J.], 141 AD3d 651, 652 [2016]).
 

 After the officer spoke with the children, the mother declared her intention to leave, but she was detained and, when she resisted, she was put up against a vehicle, handcuffed, and placed in a patrol vehicle. The mother was arrested for endangering the welfare of the children (Penal Law § 260.10) and for appearing in public under the influence of narcotics (§ 240.40). According to the officer, the children were cold and wet and, although they were not immediately sheltered while he was assessing the situation, they were shortly thereafter placed in another patrol vehicle for the dual purpose of removing them from the weather conditions and transporting them to the police station. The police discovered that the mother was in possession of a box of suboxone, which is used to treat opiate dependence, and that the box was missing 22 doses even though the mother’s prescription was issued only five days prior and the medication was to be taken only twice daily. The mother’s physician documented that the mother had previously reported a tendency to increase the dosage of suboxone on her own, and the physician testified that misuse of suboxone can have untoward side effects such as sedation, dysphoria and mood changes, and may affect a person’s cognitive abilities (see generally Matter of Crystiana M. [Crystal M. — Pamela J.], 129 AD3d 1536, 1537 [2015]).
 

 Based upon the foregoing, we conclude that the court properly determined that petitioner established by a preponderance of the evidence that the children were neglected inasmuch as they were in imminent danger of physical, emotional or mental impairment as a consequence of the mother’s failure to exercise a minimum degree of parental care in providing the children with proper guardianship (see Family Ct Act § 1012 [f] [i] [B]; Matter of Devon EE. [Evelyn EE.], 125 AD3d 1136, 1137-1138 [2015], Iv denied 25 NY3d 904 [2015]; Matter of Pedro C. [Josephine B.], 1 AD3d 267, 268 [2003]). The above incident is by itself sufficient to sustain the finding of neglect inasmuch as the record establishes that the mother’s judgment was strongly impaired and the children were exposed to a risk of substantial harm (see Pedro C., 1 AD3d at 268). “ ‘The fact that [the mother] presented conflicting evidence to the court does not require a different result’ ” (Matter of Emily W. [Michael S.— Rebecca S.], 150 AD3d 1707, 1709 [2017]) and, here, the court declined to credit the mother’s effort to minimize or explain her behavior (see Devon EE., 125 AD3d at 1137-1138). “We accord great weight and deference to the court’s determinations, ‘including its drawing of inferences and assessment of credibility/ and we will not disturb those determinations where, as here, they are supported by the record” (Emily W., 150 AD3d at 1709).
 

 We reject the mother’s further contention in both appeals that the court erred in concluding that petitioner established, by a preponderance of the evidence, that the mother also neglected the children by abandoning them following her arrest (see Family Ct Act § 1012 [f] [ii]; Social Services Law § 384-b [5]). The evidence at the hearing established that the mother evinced an intent to forgo her parental rights and obligations as manifested by her failure to visit the children or to communicate with the children or petitioner, although she was able to do so in the days following her arrest and was not prevented or discouraged from doing so by petitioner (see Social Services Law § 384-b [5] [a]). “The statute makes clear that the burden rests on the parent to maintain contact and that subjective good faith will not prevent a finding of abandonment” (Matter of Julius R, 63 NY2d 477, 481 [1984]; see § 384-b [5] [b]) and, here, contrary to the mother’s contention in both appeals, the record establishes that she failed to maintain such contact.
 

 Present — Smith, J.P., Peradotto, Lindley, DeJoseph and Winslow, JJ.