Matter of Alexia KK. (Isaac KK.) (2026 NY Slip Op 01567)

Matter of Alexia KK. (Isaac KK.)

2026 NY Slip Op 01567

Decided on March 19, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 19, 2026

CV-24-1119
[*1]In the Matter of Alexia KK., alleged to be a Neglected Child. Ulster County Department of Social Services, Respondent; Isaac KK., Appellant. (Proceeding No. 1.)
In the Matter of Alexia KK., alleged to be a Neglected Child. Ulster County Department of Social Services, Respondent; Isaac KK., Appellant. (Proceeding No. 2.)

Calendar Date:January 12, 2026

Before:Garry, P.J., Clark, Pritzker, Powers and Corcoran, JJ.

Whiteman Osterman & Hanna, LLP, Albany (J. Rochelle Cavanagh of counsel), for appellant.
Ulster County Department of Social Services, Kingston (Gerard Van Loan of counsel), for respondent.
Donna C. Chin, Kinderhook, attorney for the child.

Garry, P.J.
Appeals (1) from an order of the Family Court of Ulster County (Keri Savona, J.), entered May 1, 2024, which granted petitioner's application, in proceeding No. 1 pursuant to Family Ct Act article 10, to adjudicate the subject child to be neglected, and (2) from an order of said court, entered May 1, 2024, which granted petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 10, to hold respondent in willful violation of an order for services, and committed respondent to jail for six months.
Respondent (hereinafter the father) is the father of the subject child (born in 2022). During a traffic stop on July 23, 2022, law enforcement recovered a variety of packaged drugs from the father's vehicle, including crack cocaine, oxycodone, amphetamine and marihuana. The child was present in the vehicle at the time of the stop, as was the child's mother. The father was arrested and charged with a number of drug offenses, and he ultimately pleaded guilty to criminal possession of marihuana in the third degree in satisfaction of the multicount indictment. Petitioner filed a neglect petition against the father in connection with the event, and the child was placed in the temporary custody of the maternal grandmother. Family Court later issued an order for services that, as relevant here, directed the father to refrain from the possession or consumption of illegal drugs. When the father subsequently tested positive for fentanyl during a random drug screen, petitioner filed the second subject petition alleging that he had willfully violated the order for services. Following a joint fact-finding hearing on the two petitions, Family Court concluded that the father neglected the child by placing her in near proximity to narcotics trafficking and that he had willfully violated the August 2022 order for services. A dispositional hearing subsequently ensued, after which the court issued separate orders adjudicating the father to have neglected the child and sentencing him to six months in jail in connection with his willful violation of the August 2022 order for services.[FN1] The father appeals from both orders.
Initially, as the father raises no argument challenging the violation order in his brief on appeal, he has abandoned any challenge thereto (see Matter of Rebecca S. v Ashley T., 230 AD3d 1407, 1409 [3d Dept 2024]; Matter of Henry CC. v Antoinette DD., 222 AD3d 1231, 1232 [3d Dept 2023]). As for the propriety of the neglect finding, the father argues that petitioner did not establish that the child was actually harmed or was in imminent danger of being harmed as a result of his conduct forming the basis of the underlying neglect finding. We disagree.
Neglect may be found where a parent fails to exercise a minimum degree of care and, as a result, a child's condition is impaired or placed in imminent danger of becoming impaired (see Family Ct Act § 1012 [f] [i]). Although the Court of Appeals has made clear that "imminent" danger must be [*2]"near or impending, not merely possible" (Nicholson v Scoppetta, 3 NY3d 357, 369 [2004]; accord Matter of Afton C. [James C.], 17 NY3d 1, 9 [2011]), a court is "not required to wait until a child has already been harmed before it enters a finding of neglect" (Matter of Jefferson C.-A. [Carlos T.-F.], 227 AD3d 894, 895 [2d Dept 2024] [internal quotation marks and citation omitted]). It is also well established that a neglect finding may be based upon evidence establishing that a parent exposed a child to "the very dangerous activity of narcotics trafficking" (Matter of Evan E. [Lasheen E.], 95 AD3d 1114, 1115 [2d Dept 2012]; see Matter of Eliani M.-R. [Sonia M.], 172 AD3d 636, 636 [1st Dept 2019]).
During the fact-finding hearing, the trooper who stopped the father's vehicle testified that he did so upon observing the vehicle cross a double yellow line. While speaking with the mother after initiating the stop, the trooper observed a glassine envelope consistent with narcotics packaging on the passenger side floor. He then directed the mother to step out of the vehicle and searched her purse, finding an oxycodone pill inside. The trooper subsequently searched the interior of the vehicle and, in the center console, located a plastic baggie of crack cocaine, 8 to 10 plastic baggies of oxycodone and an amphetamine pill. A backpack containing approximately 17 ounces of marihuana in multiple sandwich bags was also found in the trunk of the vehicle. Suboxone and $825 in cash was recovered from the father's person. The trooper, with years of training and experience in drug-related activity, testified that, in his experience, when someone possesses the amount and variety of packaged drugs present here along with a significant amount of cash on their person, they are engaging in drug sales.
For his part, the father testified that he was on the way from his house to a family barbecue at the time of the stop. Although the father admitted that the subject vehicle belonged to him, he maintained that the drugs were not his and that he had no idea the drugs were inside of the vehicle, asserting that a friend whom he refused to identify primarily drove the vehicle and he himself had not driven it for weeks preceding the incident. He also testified that the drugs that were recovered were not in plastic baggies but "childproof containers"; the trooper had testified that no prescription bottles were found in the vehicle. The father similarly claimed that no Suboxone was found on his person but was instead also in the center console with the childproof medicine bottles. As for the $825, the father denied being engaged in drug trafficking and testified that the cash was his rent money, although his rent was admittedly $850 and the stop occurred on the 23rd of the month.
Family Court expressly rejected the father's testimony, including that the drugs were not his, that the cash on his person was his rent money and that he was stopped while traveling to a family barbeque[*3]. The court also credited the trooper's account of the quantity, variety and packaging of the drugs and the proposition that those factors, when coupled with the substantial cash recovered from the father's person, were indicative of his engagement in drug sales. Those credibility determinations and factual findings are entitled to great deference unless unsupported by the record (see Matter of John O. [Cassandra P.], 230 AD3d 1385, 1387 [3d Dept 2024]; Matter of Joseph GG. [Chrystal FF.], 227 AD3d 1238, 1239 [3d Dept 2024]), and there is no basis upon which to overturn those determinations here.
We acknowledge that there is no direct proof that the father was either coming from or en route to a specific drug transaction, and that the inference of those circumstances indeed draws upon the inference of his intent to sell the subject drugs. However, given the strength of the underlying inference and the additional finding of the father's untruthfulness regarding his destination, an inference of contemporaneous drug trafficking was entirely permissible (see generally Pollock v Rapid Indus. Plastics Co., 113 AD2d 520, 524-525 [2d Dept 1985]). For an inference to be drawn from circumstantial facts, the inference need only be logically compelling, or, put another way, "more likely" or "more reasonable" (Gayle v City of New York, 92 NY2d 936, 937 [1998] [internal quotation marks and citations omitted]; see New York Tel. Co. v Harrison & Burrowes Bridge Contrs., 3 AD3d 606, 608 [3d Dept 2004]). "[I]n the end, it is a question whether common human experience would lead a reasonable [person], putting his [or her] mind to it, to reject or accept the inferences asserted for the established facts" (People v Kennedy, 47 NY2d 196, 203 [1979] [internal quotation marks and citation omitted]).
Here, the multiple controlled substances in significant quantities packaged for individual sale, the substantial amount of cash carried on the father's person, trained law enforcement testimony concerning those circumstances and Family Court's finding that the father was being untruthful about his destination provided a concrete foundation from which the court could logically and rationally infer that the father was not merely in possession of drugs with an intent to sell them but was actively engaged in drug trafficking activity in the presence of the child. The court was not required to accept other competing inferences that may have also been permissible — namely, that any sales activity had either concluded or was intended for some later time outside of the child's presence. Ultimately, the subject conduct was more than mere "undesirable parental behavior" (Nicholson v Scoppetta, 3 NY3d at 369), and the risks associated with drug trafficking — including the potential for violent confrontation, sudden police intervention, and future retaliation — were immediately present. The child's exposure to this activity therefore constituted an imminent risk of harm within the meaning [*4]of Family Ct Act § 1012 (f), and we affirm (see Matter of Eliani M.-R. [Sonia M.], 172 AD3d at 636; Matter of Evan E. [Lasheen E.], 95 AD3d at 1114; compare Matter of Jefferson C.-A. [Carlos T.-F.], 227 AD3d at 896-897; Matter of Brad I. [Brad J.], 117 AD3d 1242, 1244 [3d Dept 2014]).
Pritzker and Corcoran, JJ., concur.
Clark, J. (concurring in part and dissenting in part).
We agree with the majority that the May 1, 2024 order granting petitioner's application to hold respondent (hereinafter the father) in willful violation of the order for services should be affirmed. However, we would reverse the order of neglect on the basis that petitioner did not prove by a preponderance of the evidence that the child was placed in actual or imminent risk of harm as a result of the father's conduct. Therefore, we respectfully dissent as it pertains to the affirmance of the order of neglect.
As noted by the majority, to sustain its burden on the neglect petition, petitioner was required to establish, by a preponderance of the evidence, that the child's "physical, mental or emotional condition [was] impaired or [was] in imminent danger of becoming impaired as a result of the failure of his [or her] parent . . . to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship" (Family Ct Act § 1012 [f] [i]; accord Matter of Raivyn BB. [Courtney BB.], 243 AD3d 1140, 1141 [3d Dept 2025]; see Matter of Afton C. [James C.], 17 NY3d 1, 9 [2011]). Although Family Court certainly is "not required to wait until a child has already been harmed before it enters a finding of neglect" (Matter of Jefferson C.-A. [Carlos T.-F.], 227 AD3d 894, 895 [2d Dept 2024] [internal quotation marks and citation omitted]), the imminent threat of danger to the child must be " 'near or impending, not merely possible' " (Matter of Afton C. [James C.], 17 NY3d at 9, quoting Nicholson v Scoppetta, 3 NY3d 357, 369 [2004]; see Matter of Liam DD. [Jamie CC.], 244 AD3d 1625, 1630 [3d Dept 2025]).
As relevant here, "a court may issue a finding of neglect in various circumstances involving the possession, use, or sale of illegal narcotics" (Matter of Jefferson C.-A. [Carlos T.-F.], 227 AD3d at 895), including where the proof establishes that a parent stored drugs "in a location that was 'readily accessible' to a child" (id., quoting Matter of Jaielly R.H. [Kimberly V.], 132 AD3d 993, 993 [2d Dept 2015]; see Matter of Brandon R. [James U.], 114 AD3d 1028, 1028 [3d Dept 2014]), or "exposed a child 'to the very dangerous activity of narcotics trafficking' " (Matter of Jefferson C.-A. [Carlos T.-F.], 227 AD3d at 896, quoting Matter of Majesty M. [Brandy P.], 166 AD3d 775, 776 [2d Dept 2014]; see Matter of Brandon R. [James U.], 114 AD3d at 1028; see also Matter of Jeremy KK., 251 AD2d 904, 906 [3d Dept 1998]). Courts have sustained neglect findings based upon a child's exposure to drug trafficking where a preponderance of the evidence established that "the [*5]parent 'packaged and sold narcotics in the presence of the child[ ]' " (Matter of Jefferson C.-A. [Carlos T.-F.], 227 AD3d at 896, quoting Matter of Paul J., 6 AD3d 709, 710 [2d Dept 2004]), " 'resided with the child in a home in which narcotics transactions were taking place' " (Matter of Jefferson C.-A. [Carlos T.-F.], 227 AD3d at 896, quoting Matter of Diamonte O. [Tiffany R.], 116 AD3d 866, 867 [2d Dept 2014]),
" 'or travel[ed] with the child[ ] to an arranged drug transaction' " (Matter of Jefferson C.-A. [Carlos T.-F.], 227 AD3d at 896, quoting Matter of Evan E. [Lasheen E.], 95 AD3d 1114, 1114 [2d Dept 2012]). These precedents therefore illustrate that, to sustain a neglect finding based upon a child's exposure to drug trafficking, the evidence must support a finding that the respondent parent (or person legally responsible for the child's care) had previously engaged in a drug transaction in the vicinity of the child or was imminently going to engage in such a drug transaction in his or her proximity. The record here simply does not support such a finding by a preponderance of the evidence.
Initially, we agree with the majority that there is no basis in the record to disturb Family Court's credibility determination rejecting the father's testimony that the drugs recovered from the vehicle were not his and that he was unaware of their presence at the time of the traffic stop (see Matter of Carol Q. v Charlie R., 230 AD3d 948, 951 [3d Dept 2024]; Matter of Nicole J. v Joshua J., 206 AD3d 1186, 1189 [3d Dept 2022]). Moreover, given the variety of the drugs found in the vehicle, the manner in which they were packaged, and the substantial quantity of cash found on the father's person, there is also a sound and substantial basis in the record to support Family Court's finding that the father intended to offer the drugs for sale (see Matter of Jefferson C.-A [Carlos T.-F.], 227 AD3d at 896). However, the father's "intent to sell the drugs was insufficient, without more, to warrant a finding of neglect" in the absence of evidence that the child was placed in actual or imminent risk of harm (Matter of Jefferson C.-A. [Carlos T.-F.], 227 AD3d at 897; see Matter of Brad I. [Brad J.], 117 AD3d 1242, 1244-1245 [3d Dept 2014]).
The evidence did not support a finding that the father was driving while intoxicated or impaired with the child in the car (compare Matter of Alexia J. [Christopher W.], 126 AD3d 1547, 1548 [4th Dept 2015]; Matter of Darcy Y. [Christopher Z.], 103 AD3d 955, 957 [3d Dept 2013]), and it is undisputed that the drugs recovered from the vehicle were not within the child's reach (compare Matter of Jaielly R.H. [Kimberly V.], 132 AD3d at 993; Matter of Brandon R. [James U.], 114 AD3d at 1028; Matter of Sara A. [Daniel A.], 109 AD3d 467, 467 [2d Dept 2013]). There was also no evidence that the father had ever sold drugs while the child was in his care, had placed her in near proximity to a drug sale, or was on his way to or from an arranged [*6]drug transaction at the time of the traffic stop (see Matter of Jefferson C.-A. [Carlos T.-F.], 227 AD3d at 897; Matter of Brad I. [Brad J.], 117 AD3d at 1244; compare Matter of Eliani M.-R. [Sonia M.], 172 AD3d 636, 636 [3d Dept 2019]; Matter of Essleiny A. [Rafael A.], 142 AD3d 862, 862 [1st Dept 2016], lv denied 28 NY3d 911 [2016]; Matter of Brandon R. [James U.], 114 AD3d at 1028; Matter of Evan E. [Lasheen E.], 95 AD3d at 1114; Matter of Paul J., 6 AD3d at 710; Matter of Michael R., 309 AD2d 590, 590-591 [1st Dept 2003]). Family Court did not make any express credibility determination rejecting the father's claim that he was on his way to a family barbeque at the time of the traffic stop. In any event, even if the court disbelieved such assertion, any untruthfulness in that regard does not, in turn, support an attendant inference that the father was on his way to a drug transaction with the child at the time of the traffic stop, let alone constitute proof to support such a finding by a preponderance of the evidence.
Simply stated, in our view, Family Court's determination that the father placed the child "in close proximity to drug trafficking" is too tenuous an inference to be drawn from the evidence adduced at the fact-finding hearing and lacks a sound and substantial basis in the record (see Matter of Jefferson C.-A. [Carlos T.-F.], 227 AD3d at 896; Matter of Brad I. [Brad J.], 117 AD3d 1242; compare Matter of Eliani M.-R. [Sonia M.], 172 AD3d at636; Matter of Jayden H. [Gregorio H.], 146 AD3d 444, 444 [1st Dept 2017]; Matter of Diamonte O. [Tiffany R.], 116 AD3d at 867; Matter of Brandon R. [James U.], 114 AD3d at 1028; Matter of Jamie V. [Jamie V.], 110 AD3d 481, 481 [1st Dept 2013]; Matter of Jared M. [Ernesto C.], 99 AD3d 474, 475 [1st Dept 2012]; Matter of Eugene L. [Julianna H.], 83 AD3d 490, 490 [1st Dept 2011]; Matter of Jaylin E. [Jessica G.], 81 AD3d 451, 451 [1st Dept 2011]; Matter of Andrew DeJ. R., 30 AD3d 238, 239 [1st Dept 2006]). Without sufficient evidence to support such a finding, petitioner established, at most, a possible risk of harm to the child as a result of the father's conduct, but not an imminent risk of "near or impending" harm sufficient to sustain the neglect finding (Matter of Afton C. [James C.], 17 NY3d at 9 [internal quotation marks and citation omitted]; see Matter of Jefferson C.-A. [Carlos T.-F.], 227 AD3d at 897; Matter of Brad I. [Brad J.], 117 AD3d at 1244; see also Matter of Hakeem S. [Sarah U.], 206 AD3d 1537, 1539 [3d Dept 2022], lv denied 39 NY3d 904 [2022]). Accordingly, we would reverse the neglect finding.
Powers, J., concurs.
ORDERED that the orders are affirmed, without costs.

Footnotes

Footnote 1: The attorney for the child supports Family Court's determination. She has informed us that the child remains in the care of the grandmother, who was awarded sole legal and physical custody in September 2024. Around the same time, another neglect finding was made against the father involving a separate incident concerning the child.